Miguel **MARTINEZ, Petitioner,**

Hugo **Arceo–Trevizo, Petitioner,**

Antonia **Gallardo–Palomares, Petitioner,**

Martin **Romero, Petitioner,**

v.

Joseph R. **GREENE,** District Director, United States Immigration and Naturalization Service, Denver, Colorado, Respondent.

Nos. Civ.A. 98–B–2257, Civ.A. 98–B–2347, Civ.A. 98–B–2348, Civ.A. 98–B–2363.

United States District Court, D. Colorado.

Dec. 14, 1998.

Jim Salvator, Jim Salvator, Lafayette, CO, Judy Rabinovitz, American Civil Liberties Union Foundation, New York City, for petitioner.

Michael Hegarty, United States Attorney's Office Civil Division, Denver, CO, H. Bradford Glasman, Office of Immigration Litigation Civil Division, U.S. Department of Justice, Washington, D.C., for respondent.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In these related cases, Miguel Martinez (Martinez), Hugo Arceo–Trevizo (Arceo–Trevizo), Antonio Gallardo–Palomares (Gallardo–Palomares), and Martin Romero (Romero) (collectively, Petitioners) petition for writs of habeas corpus pursuant to 28 USC § 2241 and seek preliminary injunctions declaring that 8 USC § 1226(c); Immigration and Nationality Act (INA) § 236(c) is unconstitutional on its face. Petitioners allege that § 236(c) violates their right to due process of law provided the by Fifth Amendment of the United States Constitution by removing discretion from the United States Attorney General to provide aliens being held in deportation proceedings an individualized bond hearing. Also pending are the Fed.R.Civ.P.

12(b)(1) motions to dismiss for lack of subject matter jurisdiction filed by Respondent, Joseph R. Greene, District Director, United States Immigration and Naturalization Service (INS) and a motion to hold in abeyance petitioner Romero's motion for preliminary injunction. At the hearing, the parties agreed to advance the preliminary hearing to a trial on the merits for a permanent injunction, pursuant to Fed.R.Civ.P. 65(a)(2). Based on the motions, briefs, and counsels' argument, and for the reasons set forth below, I deny the INS' motions. I grant Petitioners' motion for a permanent injunction and declare 8 USC § 1226(c); Immigration and Nationality Act § 236(c)(1) to be unconstitutional on its face.

## I.

### BACKGROUND

#### A. *Petitioners*

##### 1. *Miguel Martinez*

Martinez, a 21 year old Mexican national, became a lawful permanent resident of the United States on September 10, 1990. Martinez, who has lived in the United States since infancy, is married to a United States citizen and is the father of a United States citizen son. His three brothers are United States citizens and his mother is a lawful permanent resident of the United States. It is alleged that Martinez has felony convictions for motor vehicle theft, criminal trespass, and menacing. After his menacing conviction on September 28, 1998, Martinez was sentenced to confinement for three years. The sentence was suspended, however, on condition that he be deported to Mexico and not reenter the United States illegally.

The INS issued a Notice to Appear for removal proceedings on October 2, 1998, charging Martinez with deportability under: 1) INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) (1997), as an alien convicted of an aggravated felony; 2) INA § 237(a)(2)(A)(ii), as an alien convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct; and 3) INA § 237(a)(2)(E)(i), as an

alien convicted of a crime of domestic violence, stalking, or child abuse. On the same date, the INS ordered the petitioner detained without bond pursuant to INA § 236(c)(1), 8 U.S.C. § 1226(c)(1) (1997). Martinez requested a bond determination from the Immigration Judge which was denied on October 15, 1998.

### 2. *Hugh Arceo–Trevizo*

Arceo–Trevizo, a 21 year old Mexican national, became a lawful permanent resident of the United States on January 4, 1990. The INS alleges he has convictions for drug possession with intent to distribute and carrying a concealed weapon. The INS issued a Notice to Appear for removal proceedings on September 11, 1998, charging Arceo–Trevizo with deportability under INA § 23 7(a)(2)(A)(iii), as an alien convicted of an aggravated felony, based on his drug trafficking offense. On September 22, 1998, the INS set bond at $20,000 under the transitional rules then in effect. Thereafter, Arceo–Trevizo requested a bond re-determination from the immigration judge. On October 8, 1998, however, the transitional rules under which he received a bond setting expired, activating the permanent custody rules at issue here.

### 3. *Antonio Gallardo–Palomares*

Gallardo–Palomares is an unmarried, 41 year old Mexican national who gained lawful permanent resident status on April 28, 1986. It is alleged Gallardo–Palomares sustained convictions for felony menacing and third-degree assault in April 1998. The INS issued a Notice to Appear for removal proceedings on September 29, 1998, charging Gallardo–Palomares with deportability under INA § 237(a)(2)(A)(iii), as an alien convicted of an aggravated felony, based on these convictions. On September 30, 1998, the INS ordered him detained without bond. Gallardo–Palomares requested a bond re-determination from the immigration judge. In the interim, however, the transitional detention rules expired, activating the permanent custody rules in dispute here.

### 4. *Martin Romero*

Romero, a Mexican national and lawful permanent resident of the United States, allegedly was convicted of a misdemeanor firearms violation in 1994. He is being detained without bond pending proceedings to deport him for violation of INA § 237(a)(2)(C). He has applied for relief from removal and according to the INS, it will not likely oppose relief. For strategic reasons, Romero opposes the INS' motion to hold his case in abeyance.

Because it is Romero's right to determine the statutory provisions under which he challenges the INS' proceedings, I will deny Respondent's motion to hold in abeyance Romero's case.

### II.

### RESPONDENTS' FED.R.CIV.P. 12(b)(6) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

■ As a threshold issue, the INS argues that recent amendments to the INA preclude this Court from exercising jurisdiction over these petitions. I disagree.

The INA, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), states: "[e]xcept as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." IIRIRA § 306(a) (codified at 8 U.S.C. § 1252(g)). Because the INA, as amended, does not mention habeas relief for constitutional violations, many courts have addressed the question whether federal district courts retain statutory jurisdiction under 28 § 2241, or constitutional jurisdiction under the Suspension Clause, to review alleged constitutional violations. *See* U.S. CONST. art. I, § 9, cl. 2 ("The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion

the public Safety may require it."). A substantial majority of courts conclude that federal district courts retain jurisdiction under § 2241 and the Suspension Clause, despite the expansive language of 8 U.S.C. § 1252(g), when the habeas petitioner alleges substantial constitutional violations. *Macias v. INS,* Civil Action No. 98–B–1736, November 27, 1998 and cases cited therein. The Tenth Circuit Court of Appeals has not yet addressed this question. *See Fernandez v. I.N.S.,* 113 F.3d 1151, 1154 n. 3 (10th Cir.1997) (not foreclosing the "possibility that BIA decisions may still be subject to habeas review under 28 U.S.C. § 2241 by the Supreme Court, an individual justice or circuit judge, or the district courts" for " 'substantial' constitutional errors."); *accord Williams v. I.N.S.,* 114 F.3d 82, 84 (5th Cir.1997) (noting "a limited opportunity to apply for a writ of habeas corpus may remain"). I join the majority and hold that federal district courts retain jurisdiction under § 2241 to address substantial constitutional claims even after the AEDPA and the IIRIRA became effective. *See Macias.*

## III.

## STATUTORY HISTORY OF DETENTION OF "CRIMINAL" ALIENS

A. *The Immigration and Nationality Act of 1952*

The Immigration and Nationality Act of 1952, 8 USC § 1251, § 241(INA) was a major recodification and revision of all previous immigration laws. Although no aggravated felony provisions were incorporated into the INA, the INA contained provisions regulating criminal aliens. Under the INA, an alien was subject to deportation if convicted of a "crime involving moral turpitude" and if the crime was committed within five years after entry into the United States. *Id.* at § 241(a)(4)(A). An alien convicted of violating drug or firearm laws was also deportable. *Id.* at subsections (a)(4) and (11).

The INA provided that:

[p]ending final determination of the deportability of any alien taken into custody under warrant of the Attorney General, such alien may, in the discretion of the Attorney General (1) be continued in custody; or (2) be released under bond in the amount of not less than $500, with security approved by the Attorney General; or (3) be released on condition of parole.

8 USC § 156, INA § 223.

B. *The Anti–Drug Abuse Act of 1988*

In 1988, in response to concerns about increased criminal violations by aliens, Congress passed an omnibus drug enforcement bill known as the Anti–Drug Abuse Act of 1988 (ADAA) including provisions relating to criminal aliens. Pursuant to the ADAA, all of the criminal alien provisions were deemed to be amendments to the INA. ADAA, § 7341. Under these provisions, a new category of deportable alien, aggravated felon, was established. Under the ADAA, aggravated felonies were defined as murder, drug trafficking crimes, or illicit trafficking in firearms or destructive devices, and any attempt or conspiracy to commit such acts in the United States. ADAA § 7342, amending INA § 101(a), 8 USC § 1251(a) (1982). Further, the ADAA § 7343(a), INA § 242(a)(2) required the Attorney General to take into custody any alien convicted of an aggravated felony upon completion of the alien's sentence and barred the Attorney General from releasing the alien. *Id.*

This mandatory detention statute was declared unconstitutional as violative of Due Process by the majority of courts which considered it. *See, e.g., Leader v. Blackman,* 744 F.Supp. 500 (S.D.N.Y.1990); *Kellman v. INS,* 750 F.Supp. 625 (S.D.N.Y.1990); *Probert v. INS,* 750 F.Supp. 252 (E.D.Mich. 1990), *affd. on other grounds,* 954 F.2d 1253 (6th Cir.1992); *Paxton v. INS,* 745 F.Supp. 1261 (E.D.Mich.1990), *dismissed as moot,* 925 F.2d 1465, 1991 WL 22017 (6th Cir.1991); *Agunobi v. Thornburgh,* 745 F.Supp. 533 (N.D.Ill.1990). *But see Davis v. Weiss,* 749 F.Supp. 47 (D.Conn.1990); *Morrobel v. Thornburgh,* 744 F.Supp. 725 (E.D.Va.1990).

Following these successful constitutional challenges on Due Process grounds, Congress amended the statute in 1990 and 1991 to permit release of those aggravated felons who were lawfully admitted to the United

States, and who could demonstrate that they were not a threat to the community and were likely to appear for their hearings.

## C. Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, Stat. 1214

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, Stat. 1214 (AEDPA) which created automatic mandatory detention without eligibility to apply for bond for aggravated felons and other non-citizens with criminal convictions. INA § 242(a)(2), 8 USC § 1252. The AEDPA became moot when, almost immediately, Congress replaced it with the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 1570. The new statute included "Transition Period Custody Rules," IIRIRA § 303(b)(3), which provided Immigration Court bond hearings to aliens with criminal convictions, allowed the alien the right to demonstrate legal entry into the United States and the right to show that the alien did not present a substantial risk of flight or threat to persons or property. If the alien met these bond criteria, the Immigration Court could, as a matter of discretion, set bond pending the final administrative action on the case. *See, e.g., Matter of Noble,* Int. Dec. 1331 (BIA 1997).

On October 9, 1998, IIRIRA's Transition Period Custody Rules expired and INA Section 236(c), 8 USC 1226(c), became effective:

Detention of Criminal Aliens.

(1) Custody. The Attorney General shall take into custody any alien who

(A) is inadmissible by reason of having committed any offense covered in section 212(a)(2);

(B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D),

(C) is deportable under section 237(a)(2)(A)(i) on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 212(a)(3)(B) or deportable under section

237(a)(4)(B), when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release. The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of title 18, United States Code, that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

INA § 236(c), 8 U.S.C. § 1226(d).

## IV.

## ANALYSIS

According to Petitioners, by denying them the opportunity to apply for bond, § 236(c), on its face, unconstitutionally deprives them of their right to due process of law as guaranteed by the Fifth Amendment of the United States Constitution. The issue before me is whether the blanket mandatory detention provision contained in § 236(c), 8 USC § 1226, violates the Fifth Amendment's right to due process of law. For the following reasons, I find and conclude that § 236(c) is unconstitutional on its face.

## A. Scope of judicial inquiry into immigration legislation

I acknowledge the limited scope of my inquiry into immigration legislation. The Supreme Court has emphasized that "over no conceivable subject is the legislative power of Congress more complete than it is over" the admission and expulsion of aliens. *Fiallo v.*

*Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) *quoting Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339, 29 S.Ct. 671, 53 L.Ed. 1013 (1909). The Court "has long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Shaughnessy v. Mezei*, 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953). A myriad of decisions have not departed from the long-established rule that "the power over aliens is of a political character and therefore subject only to narrow judicial review." *Hampton v. Mow Sun Wong*, 426 U.S. 88, 101 n. 21, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), *citing Fong Yue Ting v. United States*, 149 U.S. 698, 713, 13 S.Ct. 1016, 37 L.Ed. 905 (1893); *accord, Mathews v. Diaz*, 426 U.S. 67, 81–82, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). The *Mathews* Court observed that in the exercise of its broad power over immigration and naturalization, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Id.* at 80, 96 S.Ct. 1883.

Petitioners do not dispute Congress' plenary authority over *substantive* immigration decisions as enunciated in the above cited Supreme Court jurisprudence. Rather, Petitioners challenge the *method* by which the immigration statutes are implemented.

### B. *Standard of Review*

#### 1. *Facial challenge to federal statute*

When challenged facially, a federal statute is presumed constitutional unless shown otherwise. *Branson School Dist. RE–82 v. Romer*, 161 F.3d 619, 636 (10th Cir. 1998). Furthermore, in light of this deferential rule of statutory construction, "[a] facial challenge to a legislative Act is ... the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095,· 95 L.Ed.2d 697 (1987). *See also Branson School Dist. RE–82*, 161 F.3d at 636.

#### 2. *Standard applicable to Due Process challenge*

Citing *Reno v. Flores*, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), the INS states that in deciding the constitutionality of § 236(c), I must apply "the (unexacting) standard of [whether the statute] rationally advanc[es] some legitimate governmental purpose." *Id.* at 306, 113 S.Ct. 1439. The INS misreads *Flores*.

In *Flores*, a case concerning the constitutionality of the release procedures accorded juvenile aliens, the Court determined that because a juvenile is "always in some form of custody," *Schall*, 467 U.S. at 265, 104 S.Ct. 2403, the right sought by the juvenile aliens was not fundamental. *Id.* at 302–03, 104 S.Ct. 2403. Thus, the more deferential standard of determining whether a statute rationally advanced some legitimate governmental purpose applied. *Id.* at 303, 104 S.Ct. 2403. In so stating, the Court distinguished the standard applicable to assertions of deprivations of "fundamental" liberty interests such a "freedom from physical restraint ... in the sense of ... a barred cell." *Id.* at 302, 104 S.Ct. 2403. In such cases, the "Fifth ... Amendment's guarantee of 'due process of law' ... forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* at 302, 104 S.Ct. 2403, *citing Salerno*, 481 U.S. at 746, 107 S.Ct. 2095.

Petitioners assert that the *Salerno* standard, acknowledged in *Flores*, is applicable here. I agree. Moreover, although decided before *Salerno*, in *Rodriguez–Fernandez v. Wilkinson*, 654 F.2d 1382 (10th Cir.1981), the Tenth Circuit stated that "[d]etention pending deportation seems properly analogized to incarceration pending trial or other disposition of a criminal charge."

### C. *Due Process*

The due process clause of the Fifth Amendment of the United States Constitution provides "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." The Supreme Court has held that the due process clause provides

individuals with two forms of due process—substantive and procedural. In determining the facial validity of § 236(c), I evaluate both components of the due process clause.

### 1. *Substantive due process*

 The substantive component of due process forbids the government from infringing in any way certain fundamental liberty interests, no matter the process provided, unless the infringement is narrowly tailored to serve a compelling state interest. *Flores,* 507 U.S. at 301–302, 113 S.Ct. 1439; *Salerno,* 481 U.S. at 749, 107 S.Ct. 2095. Moreover, substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'" *Salerno,* 481 U.S. at 746, 107 S.Ct. 2095, *quoting Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

 In the context of immigration statutes and regulations, whether the infringement is narrowly tailored to serve a compelling governmental interest is determined by evaluating whether the infringement on liberty: 1) is impermissible punishment or permissible regulation; and 2) is excessive in relation to the regulatory goal Congress sought to achieve. *See e.g. Leader,* 744 F.Supp. at 507. *See also Salerno,* 481 U.S. at 747, 107 S.Ct. 2095 (standard applicable in criminal cases). If the interference with liberty satisfies these inquiries and, therefore, does not violate substantive due process, procedural due process requires that the restriction be implemented fairly. *Id.* at 746, 107 S.Ct. 2095 *citing Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

 Deportation, notwithstanding the extreme hardship it imposes on those subject to it, is clearly regulatory in nature and not punishment. *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984); *Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 96 L.Ed. 547 (1952). In applying the compelling interest standard to § 236(c) I look to Congressional intent for its enactment. *Salerno,* 481 U.S. at 747, 107 S.Ct. 2095 *citing Schall v. Martin,* 467 U.S. 253, 269, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984).

According to the INS, § 236(c)'s mandatory detention requirement seeks to prevent criminal aliens in deportation proceedings from absconding or committing further criminal acts. Government Resp. p. 14. Without doubt, these concerns are legitimate regulatory goals and, therefore, permissible. *See e.g. Salerno,* 481 U.S. at 748–49, 107 S.Ct. 2095; *Schall,* 467 U.S. at 261, 104 S.Ct. 2403; *Carlson,* 342 U.S. at 534, 72 S.Ct. 525.

Next, I determine whether mandatory detention is excessive in relation to the permissible regulatory goals. In *Salerno,* the Supreme Court concluded that the Bail Reform Act's pretrial detention procedures were constitutional, and not excessive, in part because "[t]he arrestee [was] entitled to a prompt detention hearing." *Id.* at 747, 107 S.Ct. 2095. This aspect of *Salerno* is absent here. Indeed, § 236(c) removes all discretion from the Attorney General with respect to detention versus bond. I conclude mandatory detention for all persons covered by § 236(c) is not narrowly tailored to met the valid legislative goals. The means chosen by Congress are plainly "excessive in relation to the regulatory goal Congress sought to achieve." *Salerno,* 481 U.S. at 747, 107 S.Ct. 2095. Therefore, § 236(c) violates Petitioners' substantive due process rights.

### 2. *Procedural due process*

 The Fifth Amendment unquestionably entitles aliens to due process of law in deportation proceedings. *Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) *quoting Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

 The parameters of the process due in a given circumstance are determined generally by consideration of three factors: 1)

the private interest affected by the official action; 2) the risk of an erroneous deprivation of the interest, and the value, if any, of additional or substitute procedural safeguards; and 3) the government's interest, including the fiscal and administrative burdens the additional or substitute procedural requirements would impose. *Mathews,* 424 U.S. at 335, 96 S.Ct. 893.

First, the private interest affected is great—the right to be free of indefinite and possible long-term detention pending a deportability determination. Second, the risk of erroneous deprivation of liberty is substantial because § 236(c) provides no procedure at all for determining if an individual warrants release on bond. Finally, if familiar and traditional bail procedural requirements are imposed, the attendant fiscal and administrative burdens would be minimal. Presently, pursuant to § 236(c), the alien is entitled to a hearing to determine if he is an "aggravated felon" under the IIRIRA. Incorporation of traditional bail considerations of flight risk and danger would impose minimal administrative and fiscal burdens. I conclude that the additional burdens associated with providing individualized bond hearings are minimal and, thus, do not outweigh the risk of erroneous deprivations of liberty. *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. 893.

■ Section 236(c) fails to provide any type of bond hearing to an alien detained pending determination of his or her deportation status. Instead, the statute requires the Attorney General to detain all persons in deportation proceedings charged with being "aggravated felons" until there is a final determination of their deportability. Further, the statute provides no time limitations within which the deportability determination must be made. Due process requires more. I hold that due process requires an individualized consideration of whether each alien detained pursuant to § 236(c)(1) presents a flight risk and a threat to the community's safety. *Cf. Salerno,* 481 U.S. at 750, 107 S.Ct. 2095 (pretrial detention permissible if there is "proof that the arrestee ... presents a demonstrable danger to the community"); *Hamaya,* 797 F.Supp. at 192 (where sentence has been fully served, criminal record alone provides no basis for inferring that alien is a flight risk).

■ According to the INS, § 236(c)(2)'s release provision renders the statute constitutional. I disagree.

■ Section 236(c)(2) allows for release, after an individualized determination of flight and safety risk, *only* when the Attorney General decides that it is necessary to release an alien to protect witnesses, potential witnesses, persons cooperating with an investigation into major criminal activity or immediate family members or close associates of such persons. However, where, as here, a fundamental liberty interest is implicated, constitutional due process may not be parsed and distributed solely to the persons adjudged by Congress to deserve it.

■ Inexplicably, the INS points to § 241(a)(2) to support its view that § 236(c) is constitutional. In contrast to § 236(c), once there is a final, enforceable order of removal, §§ 241(a)(2) and (6) require the Attorney General to consider discretionary release from custody if the alien has not been removed from the country within 90 days. *Id.* The INS argues that, unlike the 1988 statute or the AEDPA's mandatory detention provision, this statute, by its nature and design, excludes the possibility of "indefinite detention" by imposing a cap on the duration of detention. INS Resp. p. 13. The INS ignores the potential impact of § 236(c)'s mandatory detention provision which, in contrast to § 241(a), provides no time limitations on detention. Thus, an alien could be detained indefinitely, pending a determination of deportability. And, ironically, the process provided by § 241(a)(2) illustrates the constitutional failings of § 236(c).

Under § 242(a)(2), once all hope of remaining in the United States is lost, if the INS does not remove the alien within 90 days, he becomes eligible for release from custody. Under § 236(c), *before* an alien is determined to be deportable and the flame of hope burns brightly, the Attorney General possesses no discretion to determine whether the alien may be released on bond. This peculiar statutory scheme undermines the INS' argu-

ment that before a final deportation determination is made, detention is necessary to prevent the criminal alien from absconding or committing further crimes.

The severe and unyielding nature of § 236(c) and the need for individualized bond determinations is illustrated by contrasting the circumstances of the Petitioners. Martinez, Arceo–Trevizo, and Gallardo–Palomares allegedly have been convicted of felonies under the criminal laws of the State of Colorado. In contrast, Romero, who was arrested during a scheduled INS interview to obtain citizenship, was convicted in 1994 of a municipal misdemeanor for discharging a firearm. During oral argument, the INS conceded that Romero has established a *prima facie* case for eligibility to become a citizen and is eligible for cancellation of removal proceedings or termination of removal proceedings under 8 C.F.R. 239.2. Yet, under § 236(c), Romero, as well as the other petitioners, could not be considered for bond.

In *Richardson v. Reno,* 1998 WL 850045 (11th Cir.1998), the first case to address the constitutionality of § 236(c), the Eleventh Circuit held that § 236(c)'s mandatory detention provision is not violative of due process. *Id.* In addressing the exclusion of a legal permanent resident alien who sought to reenter the United States, the *Richardson* court engaged in a lengthy and detailed review of the IRRIRA provisions. However, the Eleventh Circuit's analysis of § 236(c) is cursory and failed to recognize the distinction between the right of Congress to legislate substantive immigration rules and the limitations imposed by the Constitution on the methods by which the immigration statutes are implemented. Thus, I am not persuaded by *Richardson.*

Further, the principal cases relied on by the INS in defending the constitutionality of IIRIRA § 236(c), actually support Petitioners' position. In *Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), the Court addressed a facial challenge to a regulation permitting detained juvenile aliens to be released only to certain adults. As stated, *Flores* was decided under a more deferential standard. Further, the 1988 INA statute evaluated by the *Flores* Court provided the

Attorney General discretion, pending final determination of deportability, to release aliens under bond. Thus, *Flores* is distinguishable from this case.

The INS relies heavily on *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), in which four aliens challenged a provision of the Internal Security Act of 1950 that provided the Attorney General with the "discretion" to hold an alien without bail pending deportation. Thus, like the statute in *Flores,* the statute analyzed in *Carlson* stands in stark contrast to § 236(c) which affords the Attorney General no discretion at all. And, while the *Carlson* Court concluded that the specific aliens in that case posed a sufficient threat to society to permit the withholding of bail pending a final determination of deportability, it stated that a "purpose to injure [society] could not be imputed generally to all aliens subject to deportation." *Id.* at 538, 72 S.Ct. 525. Thus, *Carlson* supports Petitioners' request for an individualized determination of risk of flight and danger to the community.

### D. *Conclusion*

The mandatory detention provision in § 236(c) fails to provide *any* procedure to detained aliens. Thus, *a fortiori,* there are no circumstances under which § 236(c) could be valid. *See Salerno,* 481 U.S. at 745, 107 S.Ct. 2095; *Branson School Dist. RE–82,* 161 F.3d at 636. I hold that 8 USC § 1226(a), INA § 236(c), violates on its face, the constitutional right to due process of law guaranteed by the Fifth Amendment of the United States Constitution.

Having found § 236(c)(1) unconstitutional, I find further that the IIRIRA's Transition Custody Rules previously in effect, apply to aliens detained pursuant to § 236(c) who request a bond hearing. In finding § 236(c) unconstitutional, I express no opinion as to the outcome of any bond hearing.

Accordingly, IT IS ORDERED that:

1. the motion to dismiss for lack of subject matter jurisdiction filed by Respondent Immigration and Naturalization Service is DENIED;

2. Respondent's motion to hold in abeyance Petitioner Martin Romero's case is DENIED;

3. Petitioners' motion for a preliminary injunction is converted to a motion for permanent injunction;

4. Petitioner's motion for a permanent injunction declaring 8 USC § 1226(c), INA § 236(c) unconstitutional on its face is GRANTED. It is DECLARED that 8 USC § 1226(c), INA § 236(c) is unconstitutional on its face;

5. Petitioners' application for writs of habeas corpus are GRANTED to the extent that Respondent shall FORTHWITH provide Petitioners with an individualized bond hearing pursuant to IIRIRA's Transition Custody Rules, IIRIRA § 303(B)(3); and

6. upon filing a bill of costs within 10 days of the entry of judgment, Petitioners are GRANTED reasonable attorney fees and costs.