Fran GASHAJ, Petitioner,

v.

Luis GARCIA, District Director, Immigration and Naturalization Service, et al., Respondents.

No. EP–02–CA–0193–DB.

United States District Court, W.D. Texas, El Paso Division.

Dec. 16, 2002.

**662**

Jesus M. Hernandez, Attorney at Law, El Paso, TX, for Petitioner.

Guadalupe R. Gonzalez, Special Assistant United States Attorney, El Paso, TX, Andrew C. Maclachlan, Washington, DC, for Respondents.

### MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Petitioner Fran Gashaj's "Petition for a Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief," filed in the above-captioned cause on May 8, 2002; Respondents' "Motion to Dismiss and Return and Answer to Petition for a Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief," filed June 7, 2002; Petitioner's Response to Respondents' Motion to Dismiss, filed July 9, 2002; and Respondents' Reply to Petitioner's Response, filed July 26, 2002. After due consideration, the Court is of the opinion that Respondents' Motion to Dismiss should be denied and Petitioner's Writ Petition should be granted.

### BACKGROUND

Petitioner Fran Gashaj ("Gashaj") is thirty-six (36) years of age and is a native of Albania. Gashaj was admitted to the United States as a lawful permanent resident on February 14, 1991. Gashaj is married to a United States legal resident

alien and has four United States citizen children, all of whom presently reside in the State of Michigan.

On August 3, 2001, Gashaj pled guilty in the United States District Court for the Southern District of Texas to one count of transporting undocumented aliens within the United States for profit in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i). Gashaj was sentenced to a term of sixty-days imprisonment. On November 7, 2001, the Immigration and Naturalization Service ("INS") issued a Notice to Appear, charging Gashaj removable, pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1227(a)(2)(A)(iii),[1] as an alien convicted of an aggravated felony.[2]

On November 13, 2001, an INS official determined that Gashaj would be held without bond pursuant to the mandatory detention provision in 8 U.S.C. § 1226(c). The INS took Gashaj into custody on November 14, 2001, where he currently remains. Gashaj made a written request to the INS to assign an Immigration Judge ("IJ") to reconsider his bond determination. An IJ denied his request. In December of 2001, Gashaj made a second request for bond determination. The INS denied it and responded that Gashaj's detention was mandatory until his case was adjudicated. Thus release on bond was unavailable because he was charged with removability as an aggravated felon.

Gashaj's removal proceedings commenced on March 14, 2002 before an IJ.

The IJ found Gashaj removable as charged. Gashaj appealed the IJ's determination to the Board of Immigration Appeals. That appeal is still pending.

Gashaj filed the instant Petition for Writ of Habeas Corpus Complaint for Injunctive and Declaratory Relief on May 8, 2002. Since Gashaj is currently being detained under the mandatory detention provision in § 236(c) of the INA, he challenges the constitutionality of that section. Specifically, the Petition raises the issue of whether a lawful permanent resident alien should be at liberty pending his removal proceedings initiated on the basis of a serious criminal conviction or serious criminal behavior. Gashaj further argues that the denial of his right to be free from detention pending removal proceedings is in violation of the Fifth Amendment's procedural and substantive due process strictures, the Eighth Amendment, the Administrative Procedure Act, and the Equal Access to Justice Act.

### Discussion

#### A. The Applicable Law

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") which amended the INA to include § 236(c). Section 236(c), provides, in relevant part, that:

> The Attorney General shall take into custody any alien who—

---

1. INA § 237(a)(2)(A)(iii) states that "[a]ny alien who is convicted of an aggravated felony at any time after admission is removable." 8 U.S.C. § 1227(a)(2)(A)(iii).

2. The term "aggravated felony" includes:
   an offense described in sections (1)(A) or (2) of section 1324(a) [of Title 8, U.S.C., INA § 274(a)] (relating to alien smuggling), ex-

cept in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or abiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this Act.
8 U.S.C.A. § 1101(a)(43)(N)(West 1999)

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C.A. § 1226(c)(1) (West 1999).

Under § 236(c), the Attorney General is thus required to take into custody aliens who have committed certain offenses without granting the alien a bail review hearing. *Id.* The alien must remain in custody until deportation proceedings are completed. *Id.* Once deportation proceedings become final, if the INS does not remove the alien within 90 days, he becomes eligible for release from custody. 8 U.S.C.A. § 1231(a)(3) (West 1999). However, pending completion of those proceedings, the Attorney General may only release the alien for witness protection purposes—an issue not implicated in Gashaj's case. 8 U.S.C.A. § 1226(c)(2) (West 1999).

Section 236(c) specifically pertains to "criminal aliens." This section and its mandatory detention provision applies to resident aliens who are convicted of aggravated felonies. An "aggravated felony" is broadly defined under 8 U.S.C. § 1101(a)(43) to include, among other things, crimes of violence, drug offenses,

and offenses related to theft and fraud. The crime committed by Gashaj is also categorized as an aggravated felony and, thus, triggers the mandatory detention provision under § 236(c). 8 U.S.C.A. § 1101(a)(43)(N) (West 1999).

Whether the mandatory detention provision is unconstitutional as applied to permanent resident aliens is the issue currently before the Court. Gashaj argues that the mandatory detention provision is a violation of his substantive and procedural due process rights. First, the Due Process Clause of the Fifth Amendment provides that, "[n]o person shall ... be deprived of life, liberty, or property without due process of law." U.S. CONST. amend. V. In order to resolve this constitutional issue, the Court must systematically perform a two-step analysis as described by the Supreme Court in *Washington v. Glucksberg,* 521 U.S. 702, 720–21, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772 (1997).

In reviewing a legislative enactment, the Court must first determine "whether the claimed violation involves one of 'those fundamental rights and liberties, which are, deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Id.* (quoting *Moore v. City of East Cleveland, Ohio,* 431 U.S. 494, 503, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977)). The second step depends on the outcome of the first step. *Id.* If the asserted interest is "fundamental," then the court must apply strict scrutiny to the legislative enactment. *Id.* at 762, 117 S.Ct. 2258. On the other hand, if the interest is not fundamental, the court should only apply a rational-basis standard of review. *Id.* at 767, 117 S.Ct. 2258.

Respondents argue that Gashaj is only entitled to diminished due process protec-

tions because he does not possess a fundamental liberty interest. As alluded to in their Brief, Respondents essentially contend that Gashaj has been stripped of his constitutional protections by having committed a criminal act. In doing so, they place great reliance on the Seventh Circuit's opinion in *Parra v. Perryman,* 172 F.3d 954 (7th Cir.1999). However, the *Parra* analysis has been rejected in a number of more recent cases, those of which are cited below.

## B. Substantive Due Process
### Fundamental Right

This Court must first make a careful identification of the asserted liberty right. Here, the issue is whether an individual detained pending immigration proceedings is entitled to receive a bail hearing in which a judge determines the individual's flight risk and threat to the community. The Supreme Court has impliedly held that such an interest is fundamental. *United States v. Salerno,* 481 U.S. 739, 750, 107 S.Ct. 2095, 2103, 95 L.Ed.2d 697 (1987) (holding that government detention violates the Fifth Amendment Due Process clause unless the detention is ordered in a criminal proceeding with adequate procedural protections.). In *United States v. Salerno,* the Supreme Court addressed the constitutionality of pretrial detention for arrestees under the Bail Reform Act of 1984, allowing for the detention of an arrestee without bail pending trial if the Government demonstrated by clear and convincing evidence after an adversary hearing that no release conditions would reasonably assure the safety of the community. 481 U.S. at 750, 107 S.Ct. 2095. The Court upheld the constitutionality of the statute after balancing the Government's interest in detention against "the individual's strong interest in liberty." *Id.* The Court concluded that the arrestee's liberty interest could not lawfully be infringed unless the process was narrowly tailored to serve a compelling state interest. *Id.* at 748, 107 S.Ct. 2095.

Despite the interest declared in *Salerno,* Respondents argue that Gashaj is not afforded this right because he has lost his lawful permanent resident status and is in detention pending removal. In support of their argument, Respondents rely on the Seventh Circuit decision in *Parra v. Perryman.* In *Parra,* the petitioner was convicted of aggravated criminal sexual assault, an aggravated felony requiring removal under the INA and thus invoking mandatory detention pursuant to § 236(c). *Parra,* 172 F.3d at 955. The court held that mandatory detention did not infringe upon the petitioner's due process rights because his interest was "not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country." *Id.* at 958. In doing so, the court concluded that "[a] criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay." *Id.*

Since *Parra,* several courts have held that mandatory detention of lawful permanent resident aliens without individualized bond hearings violates the alien's due process interests. The Third, Ninth, and Tenth Circuit Courts of Appeal have all held that a permanent resident alien convicted of an aggravated felony does not forfeit his due process rights such that only a diminished liberty interest should be recognized. *Kim v. Ziglar,* 276 F.3d 523 (9th Cir.2002); *Hoang v. Comfort,* 282 F.3d 1247 (10th Cir.2002); *Patel v. Zemski,* 275 F.3d 299 (3rd Cir.2001).

The Third, Ninth and Tenth Circuits have rejected *Parra's* rationale and adopted the rationale echoed in the Supreme Court decision in *Zadvydas v.*

*Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). In *Zadvydas,* two non-U.S. citizens were being held indefinitely beyond the normal statutory-removal period of ninety days, because no country would accept them. A post-removal-period statute authorized such detention. The issue, however, was whether the post-removal statute authorized indefinite detention, or detention only for a period reasonably necessary to secure removal. The language of the statute set no such limit. The Court read an implicit reasonableness limit into the statute to avoid "serious constitutional problem[s]." *Id.* at 680, 121 S.Ct. 2491. Citing principles of constitutional avoidance, it read an express limitation into the statute. *Id.* at 707, 121 S.Ct. 2491. The Court held that detention of resident aliens for up to six months after entry of a final removal order was presumptively reasonable, but that after six months, if an alien could demonstrate that there was good reason to believe that there was no significant likelihood of removal in the reasonably foreseeable future, the Government had to rebut the alien's showing in order to continue lawful detention of the alien. *Id.* at 701, 121 S.Ct. 2491. The Supreme Court relied on *United States v. Salerno,* as discussed above, to hold that the Government must demonstrate "special justifications," such as those involving terrorists or especially dangerous individuals, for continued indefinite detention. *Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491.

Respondents argue that the issue in *Zadvydas* involved the indefinite, potentially permanent, post-order detention of an alien with no possibility of removal, and is thus distinguishable from detention under § 236(c)(1), which ends at the completion of the deportation proceedings. However, this Court is not persuaded. Although the petitioner's circumstance in *Zadvydas* is distinguishable from that of Gashaj, the holding in *Zadvydas* is applicable in the sense that it recognizes the existence of a fundamental liberty interest for permanent resident aliens. The *Zadvydas* Court expressly rejected the Government's position that "whatever liberty interest the aliens possess, it is 'greatly diminished' by their lack of a legal right to live at large in this country." *Id.* at 696, 121 S.Ct. 2491. It stands to reason that if permanent resident aliens who have a final removal order pending against them have "strong" constitutional due process rights, then so should permanent resident aliens who do not yet have a final removal order issued against them. Thus, they have a fundamental right to a determination of whether their liberty interests should be impinged during the deportation process.[3]

■ This Court agrees that the fundamental right to be free from bodily restraint is not reserved exclusively for citizens; rather, "all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth and Sixth] amendments." *Wong Wing v. United States,* 163 U.S. 228, 238, 16 S.Ct. 977, 981, 41 L.Ed. 140

---

3. The Northern District of Texas and the Northern District of California have also come to the same opinion, that permanent resident aliens who have a final removal order pending against them are also afforded "strong" constitutional due process rights. *Serrano v. Estrada,* 201 F.Supp.2d 714, 718 (N.D.Tex.2002) (permanent resident aliens who do not yet have a final removal order issued against them have a fundamental right to a determination of whether their liberty interests should be impinged during the deportation process.); *Danh v. Demore,* 59 F.Supp.2d 994, 1003 (N.D.Cal.1999) (the actual right at issue is the "modest," yet no less fundamental "right to an individualized bond determination regarding whether release pending deportation is appropriate.").

(1896); *see also Harisiades v. Shaughnessy,* 342 U.S. 580, or 586–87 n. 9, 72 S.Ct. 512, 517 n. 9, 96 L.Ed. 586 (1952) (concluding that immigrants stand "on an equal footing with citizens" under the Constitution with respect to protection of personal liberty). It strains the imagination that individuals detained because of criminal activity should have more rights than those held simply for regulatory purposes. Wherefore, this Court joins the Third, Ninth, and Tenth Circuits, as well as the Northern District of Texas and the Northern District of California, in finding that although due process rights can be denied to aliens seeking admission to the United States, permanent resident aliens enjoy a fundamental right to due process even if their deportation is inevitable.

### Standard of Review

Having determined that a fundamental right exists, the Court must now move to the second prong of the analysis; it must determine whether the purpose adopted for a mandatory detention provision outweighs the individual's constitutionally protected interest, thus withstanding the heightened standard set forth in *Salerno,* 481 U.S. at 740, 107 S.Ct. 2095; *see also Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491.[4]

█ Respondents contend that, despite the fundamental interest involved, the Court should employ a highly deferential standard. Citing *Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), Respondents maintain that § 236(c) was passed pursuant to Congress's plenary power over immigration and, therefore, this Court must apply a deferential rational basis test. This test applies "the (unex-

acting) standard of rationally advancing some legitimate governmental purpose...." *Id.* at 306, 113 S.Ct. 1439.

This Court joins those courts that have rejected the application of *Flores* to § 236(c). *See, e.g., Van Eeton v. Beebe,* 49 F.Supp.2d 1186, 1189 (D.Or.1999); *Danh v. Demore,* 59 F.Supp.2d 994, 1003–04 (N.D.Cal.1999); *Martinez v. Greene,* 28 F.Supp.2d 1275, 1281 (D.Colo.1998). First, the situation in *Flores* was substantially different from the situation facing aliens detained under § 236(c). *Flores* upheld the constitutionality of release procedures requiring that juvenile aliens, held in INS custody, be released only to a parent or lawful guardian. *Flores,* 507 U.S. at 301–02, 113 S.Ct. 1439. The Court emphasized, however, that "juveniles, unlike adults, are always in some form of custody, and where the custody of the parent or legal guardian fails, the government may (indeed, we have said must) either exercise custody itself or appoint someone else to do so." *Id.* at 302, 113 S.Ct. 1439. In contrast, this case involves the application of § 236(c) to adults detained pending removal proceedings.

Moreover, the *Flores* Court emphasized that the facilities where the juveniles were detained were more akin to "legal custody" than "detention." *Id.* at 297–98, 113 S.Ct. 1439. Therefore, the "freedom from physical restraint .... [at least] in the sense of shackles, chains, or barred cells" was not implicated. *Id.* at 301–02, 113 S.Ct. 1439. According to the Court, these facilities were

> not correctional institutions but facilities that meet state licensing requirements for the provision of shelter care, foster care, group care, and related services to

---

**4.** The Court in *Zadvydas,* after finding that a heightened standard of review applied to a lawful permanent resident, employed the two-part substantive due process inquiry estab-

lished in *Salerno.* Therefore, these two cases have conjunctively set forth the heightened standard required for the present fundamental right.

dependent children [that include] an extensive list of services, including physical care and maintenance, individual and group counseling, education, recreation and leisure-time activities, family reunification services, and access to religious services, visitors, and legal assistance. . . .

*Id.* at 298, 113 S.Ct. 1439. By comparison, Gashaj is detained pursuant to § 236(c), and is held in a less accommodating, more primitive prison-like setting. Therefore, this Court will apply the more exacting standard first established in *Salerno* and then affirmed in *Zadvydas.* The heightened standard requires a two-part analysis: (1) whether the infringement of a liberty interest is impermissible punishment or a permissible regulation, and (2) whether it is excessive in relation to the regulatory goal Congress sought to achieve. *Salerno,* 481 U.S. at 746–47, 107 S.Ct. 2095. Courts must balance these two competing interests.

■ Applying the first prong of the *Salerno* inquiry to § 236(c), the Court readily concludes that the statute constitutes permissible regulation. The power to deport necessarily encompasses the power to detain. Thus, the detention mandated in § 236(c) is regulatory and not punitive. *See Carlson v. Landon,* 342 U.S. 524, 537–38, 72 S.Ct. 525, 533, 96 L.Ed. 547 (1952) ("Deportation is not a criminal proceeding and has never been held to be punishment. . . . Detention is necessarily a part of this deportation procedure."). The issue, therefore, is whether the restriction is excessive in relation to its purpose.

Respondents claim that § 236(c) was enacted in order to ensure that criminal aliens do not escape the application of the immigration laws and subsequent removal hereunder. Respondents rely on a 1995 report by the Senate Governmental Affairs Committee finding that " '[t]hrough 1992,

nearly 11,000 criminal aliens convicted of aggravated felonies (which are particularly serious crimes) failed to appear for deportation hearings.' " Def. Brief at 24 (*quoting* s. rep. no. 104–48, 1995 WL 170285 (April 7, 1995)). Respondents also claim that

[t]he enormous failure by aliens released on bond or parole to appear at their immigration proceedings imposes a substantial cost on the people and government of the United States. Assuring that removal proceedings continue in a way so that aliens with little hope of remaining will be expeditiously removed from the United States is more than a legitimate and bona fide reason.

Res. Brief at 10–11. According to Respondents, these are sufficiently compelling goals to satisfy even the more exacting *Salerno* standard. Respondents further contend that mandatory detention is necessarily an integral part of Congress's streamlined removal process.

After reviewing Respondents' arguments and the specific facts relating to Gashaj in this case, this Court is of the opinion that, given the liberty interest involved and the lack of safeguards delineated in the statute, the scope of § 236(c) is excessive in relation to its purpose and, therefore, violative of Gashaj's substantive due process rights. Respondents' arguments are not persuasive in light of the fundamental right at stake, the right to be free from detention. Gashaj in this case, although previously-convicted of an aggravated felony, has completed his sentence imposed for his crime. He is currently being detained pending removal while an over-exhausted administration processes his paperwork. Respondents' argument that an overwhelming amount of aliens fail to appear for bond review is well-taken, yet irrelevant when considering whether an individual should be released on bond.

Likewise, it is a violation of Gashaj's due process rights to summarily determine, through a statutory mandatory detention requirement, that he is unlikely to appear. That determination should be made in court where the Government must prove that Gashaj is a flight risk. The Court finds untenable Respondents' argument that aliens, "with little hope of remaining" in the United States and who will ultimately be removed, should not be afforded the right to a bond hearing. To say that an individual, regardless of whether or not he is deportable, should remain in custody pending such resolution, is like saying, an individual charged with a crime, regardless of whether or not he is guilty, should remain in custody pending his trial. If an individual charged with a crime is afforded the constitutional right to due process in the form of a bond hearing, so too should an individual pending removal in immigration proceedings.

This Court is not alone in its thinking. Many courts have spoken out on the unconstitutionality of § 236. *See, e.g., Serrano v. Estrada,* 201 F.Supp.2d 714 (N.D.Tex.2002); *Bouayad v. Holmes,* 74 F.Supp.2d 471 (E.D.Pa.1999); *Danh v. Demore,* 59 F.Supp.2d 994 (N.D.Cal.1999); *Van Eeton v. Beebe,* 49 F.Supp.2d 1186 (D.Or.1999); *Martinez v. Greene,* 28 F.Supp.2d 1275 (D.Colo.1998); *Chamblin v. I.N.S.,* 1999 WL 803970 (D.N.H. June 8, 1999). *Cf. Ngo v. INS,* 192 F.3d 390, 398 (3d Cir.1999) (in immigration context, indefinite detention without ongoing review of alien's danger to the community or flight risk violates due process); *Ma v. Reno,* 208 F.3d 815, 825–27 & nn. 23,24 (9th Cir.2000) ("seriously questioning" conclusion that indefinite detention, even in immigration context, is constitutional). *Contra Parra v. Perryman,* 172 F.3d 954, 958 (7th Cir.1999) (holding that § 236(c) is constitutional). *Ho v. Greene,* 204 F.3d 1045, 1059–60 (10th Cir.2000) (holding that indefinite detention pending deportation is constitutional).

Admittedly, the Government has an interest in preventing future crimes, as well as flight by individuals undergoing deportation proceedings, but Congress has other "ways to rectify the problem of aliens absconding before deportation that do not implicate petitioners' right to freedom from arbitrary detention." *Danh,* 59 F.Supp.2d at 1001; *see also Ngo,* 192 F.3d at 398 ("The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category. Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption."). *Bouayad,* 74 F.Supp.2d at 475 ("While the risk of flight by aliens may be significant, the public can still be protected by a careful evaluation of an individual alien's case, which should result in the detention of those who are likely to flee."). In the absence of a bond hearing, Congress's use of a blanket, irrefutable presumption is excessive in relation to its purpose of preventing flight and future crimes.

In addition, the Court rejects the notion that safeguards delineated within the statute are sufficient to protect the rights of individuals like Gashaj. For example, § 236 contains safeguards providing the detained alien with the right to an individualized hearing before an IJ (and administrative appeal) on the issue of whether he falls within the mandatory detention provisions. This safeguard provides no protection for most detained individuals, and cannot be used as a justification for depriving a detainee of his liberty interest. That "individualized hearing" would determine only whether a detainee is eligible for the witness protection program. 8 U.S.C.A. § 1226(c)(2) (West 1999); *Martinez,* 28 F.Supp.2d at 1283. If not, the IJ lacks

authority to release him. 8 U.S.C.A. § 1226(c)(2) (West 1999); *Martinez,* 28 F.Supp.2d at 1283. "[W]here, as here, a fundamental liberty interest is implicated, constitutional due process may not be parsed and distributed solely to the persons adjudged by Congress to deserve it." *Martinez,* 28 F.Supp.2d at 1283.

The second purported safeguard is that § 236(c) excludes the possibility of indefinite detention by limiting the duration of detention to the conclusion of removal proceedings plus a 90–day removal period. This safeguard likewise does not help individuals like Gashaj in this case. Section 241(a)(1) of the INA provides that the Attorney General shall remove the alien within a period of 90 days from the date the order of removal becomes administratively final. 8 U.S.C.A. § 1231(a)(1) (West 1999). But, § 236(c) does not provide any time limits on detention pending issuance of that final order. 8 U.S.C.A. § 1226(c) (West 1999). Gashaj has been in INS custody for almost twelve months, and has not received any review of his danger to the community or flight risk, as would be typical in a bail review hearing. At this time Respondents are unable to provide any indication as to when Gashaj's removal will occur. For all the reasons set forth above, the Court finds that § 236(c) fails the *Salerno* test and, thus, violates Gashaj's substantive due process rights.

### C. Procedural Due Process

■ Because the Court concludes that Gashaj's substantive due process rights were violated, it is strictly unnecessary to determine whether his procedural due process rights were also compromised. Only when a restriction on liberty survives substantive due process scrutiny does the further question of whether the restriction is implemented in a procedurally fair manner becomes ripe for consideration. *Salerno,* 481 U.S. at 746, 107 S.Ct. 2095. Nonethe-

less, the Court considers Gashaj's procedural due process claim in the event it is later determined that § 236(c) withstands substantive due process scrutiny.

■ To determine whether a statute or governmental conduct satisfies procedural due process, courts must balance the following factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of the interest; (3) the probable value of additional or substitute procedural safeguards; and (4) the government's interest, including the fiscal and administrative burdens that additional or substitute procedures would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). By now it is well established that legal aliens are entitled to due process under *Mathews.* Permanent resident aliens are protected by the Due Process Clause of the Fifth Amendment. *Landon v. Plasencia,* 459 U.S. 21, 33–34, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982) (applying the *Mathews* test to a permanent resident alien who was denied readmission into this country while attempting to smuggle illegal aliens from Mexico). Numerous courts have applied *Mathews* to review mandatory immigration detention statutes such as § 236(c). *See, e.g., Van Eeton v. Beebe,* 49 F.Supp.2d 1186 (D.Or.1999) (permanent resident alien challenging § 236(c)'s blanket denial of bond); *Martinez v. Greene,* 28 F.Supp.2d 1275 (D.Colo.1998); *St. John v. McElroy,* 917 F.Supp. 243 (S.D.N.Y.1996) (permanent resident alien challenging denial of parole pending exclusion).

■ Under *Mathews,* a statute such as § 236(c) that denies even the possibility of bond can scarcely claim constitutional sanction. The interest at stake here is fundamental to any democratic society: the right to freedom from arbitrary detention. Because Gashaj's continued detention is unlikely to further any of the as-

serted purposes behind § 236(c), the risk of an erroneous deprivation of that interest is acute. Respondents could easily avoid these problems by affording individuals in Gashaj's situation an individualized bond hearing. The additional burden of such a hearing to the overall deportation process—a process that may take months or even years—is slight compared to the rights at stake. Indeed, release on bond may actually serve the Government's interest by freeing up unnecessarily occupied detention space. "A fundamental requirement of due process is 'the opportunity to be heard' .... at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The prior bond determination hearing before the IJ afforded Gashaj no opportunity to be heard regarding his dangerousness or flight risk. The IJ merely followed § 236(c) strictures and found he did not have jurisdiction to hold a bond hearing. Gashaj is therefore entitled to an individualized bond hearing before the IJ. For these reasons, even if § 236(c) does not violate Gashaj's substantive due process rights, it deprives him of procedural due process.

### D. Statutory Claims

Because the Court finds that the mandatory detention provisions of 8 U.S.C. § 1226(c) are unconstitutional and provide a basis for granting Gashaj's writ of habeas corpus, it does not decide any of his statutory claims.

### CONCLUSION

While Petitioner does not have an absolute right to remain at liberty while the INS undertakes removal proceedings against them, due process requires an individualized hearing on the necessity of his detention. Accordingly, the Court will grant Petitioner's Petition for a Writ of Habeas Corpus unless the Government begins a review process, including an individual hearing, within thirty days to determine whether each Petitioner's continued detention is necessary to prevent a risk of flight or a threat to the community.

Accordingly, **IT IS ORDERED** that Respondents' Motion to Dismiss and Return and Answer to Petition for a Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief, filed June 7, 2002, is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Fran Gashaj's Petition for a Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief declaring 8 U.S.C. § 1226(c), INA § 236(c) unconstitutional on its face is **GRANTED**. It is **DECLARED** that 8 U.S.C. § 1226(c), INA § 236(c) is unconstitutional on its face.

**IT IS FINALLY ORDERED** Petitioner Gashaj's Petition for a Writ of Habeas Corpus is **GRANTED** to the extent that Respondents shall provide Gashaj with an individualized bond hearing **WITHIN THIRTY DAYS.**