**Ferdinandus L. VAN EETON, Jr., Petitioner,**

v.

**David V. BEEBE, District Director, United States Immigration and Naturalization Service, Portland, Oregon; and Janet Reno, U.S. Attorney General, Respondents.**

No. CV 99–16–PA.

United States District Court, D. Oregon.

April 13, 1999.

W. Iain E. Levie, Davis, Wright, Tremaine, LLP, Portland, OR, F.J. Capriotti, Capriotti & Associates, Telephone, OR, for petitioner.

Judy Rabinovitz, American Civil Liberties Union Foundation, Immigrants' Rights Project, New York City, amici curiae.

Kristine Olson, United States Attorney, District of Oregon, Craig J. Casey, Assistant United States Attorney, Portland, OR, Michelle E. Gorden, Office of Immigration Litigation Civil Division, U.S. Department of Justice, Washington, D.C., for respondents.

**OPINION**

PANNER, District Judge.

Petitioner Ferdinandus L. Van Eeten,[1] Jr. brings this petition for habeas relief under 28 U.S.C. § 2241 against respondents David V. Beebe, district director for the Immigration and Naturalization Service (INS) in Portland, and Janet Reno, Attorney General of the United States. Petitioner contends that respondents are improperly detaining him without bond pending removal proceedings.

I grant the petition.

1. At the hearing, petitioner's counsel stated that petitioner's name is spelled "Van Eeten," although the petition's caption spells it "Van Eeton."

## BACKGROUND

Petitioner was born in Indonesia as a citizen of the Netherlands in 1949. He was admitted to the United States in 1961 as a lawful permanent resident.

In 1967, petitioner enlisted in the United States Marine Corps. Petitioner alleges that he became a United States citizen during a naturalization ceremony at Camp Pendleton in October or November 1967. Petitioner has not been able to produce evidence of his alleged naturalization.

Petitioner was in combat in Vietnam and won several medals for his service. He enlisted in the Army Reserves after being honorably discharged from the Marine Corps.

In 1981, petitioner pleaded guilty in Washington County Circuit Court to possession of cocaine. He also pleaded no contest to attempted second degree assault. Petitioner was sentenced to six months in a work release program.

In the early 1990s, petitioner founded Veterans Reunited, an organization to help veterans re-enter society. Petitioner is married to a United States citizen and has a seven-year-old child who is also a United States citizen.

In July 1996, petitioner pleaded guilty in Yamhill County Circuit Court to delivering marijuana, conspiring to deliver marijuana, and being a felon in possession of a firearm. He received a three-year sentence.

On August 26, 1996, the INS initiated deportation[2] proceedings against petitioner. When petitioner was released from state imprisonment on October 23, 1998, the INS detained him. Based on 8 U.S.C. § 1226(c)(1), the INS denied petitioner's request for a bail hearing. As of the hearing on this motion, petitioner remained in INS detention.

2. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, 110 Stat. 3009–546, which became law September 30, 1996, "merged deportation and exclusion proceed-

## DISCUSSION

I. Subject Matter Jurisdiction

[1] Congress restricts judicial review of decisions to detain criminal aliens under § 1226:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). Section 1226(e) does not, however, eliminate this court's jurisdiction to hear petitioner's constitutional challenge to § 1226(c). *See Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir.1999) (§ 1226(e) "does not purport to foreclose challenges to § 1226(c) itself, as opposed to decisions implementing that subsection"). If I were to construe § 1226(e) as an attempt to block all avenues of judicial review, including habeas petitions, the statute would violate the Suspension Clause of the Constitution. *See* U.S. Const. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."); *Magana–Pizano v. INS*, 152 F.3d 1213, 1220–21 (9th Cir.) (Suspension Clause forbids Congress from completely foreclosing habeas relief), *amended by* 159 F.3d 1217 (9th Cir.1998), *cert. granted, judgment vacated and remanded on other grounds*, —— U.S. ——, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999); *see also Parra*, at 957 ("resort to the Great Writ may be appropriate" for "claims by persons detained under § 1226(c) who say that they are citizens rather than aliens") (dictum). *Cf. Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, ——, 119 S.Ct. 936, 942 n. 7, 142 L.Ed.2d 940 (1999)

ings into a new and broader category entitled 'removal proceedings.'" *Kalaw v. INS*, 133 F.3d 1147, 1149 n. 2 (9th Cir.1997) (citing IIRIRA § 304, now codified at 8 U.S.C. §§ 1229–1229c).

(noting conflict among circuits over availability of habeas review). This court has jurisdiction over petitioner's request for habeas relief.

## II. Exhaustion of Remedies

■ Congress does not require that petitioner exhaust his administrative remedies. *See Tam v. INS*, 14 F.Supp.2d 1184, 1189 (E.D.Cal.1998) ("Congress has not specifically mandated exhaustion before judicial review of custody determinations."). When there is no statutory mandate, this court has discretion to require exhaustion. *Wang v. Reno*, 81 F.3d 808, 814 (9th Cir. 1996) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)).

■ Respondents contend that petitioner should be required to exhaust administrative remedies because that might allow this court to avoid addressing constitutional issues. Petitioner is pursuing agency appeals of his pending removal, but the agency lacks jurisdiction over petitioner's constitutional challenge to § 1226(c). *See Wang*, 81 F.3d at 814 n. 7; *Cabreja–Rojas v. Reno*, 999 F.Supp. 493, 496 (S.D.N.Y. 1998). If I were to require that petitioner exhaust his administrative remedies, he would have no effective way to challenge his detention while the administrative appeal is pending. *See St. John v. McElroy*, 917 F.Supp. 243, 247 (S.D.N.Y.1996) (under previous statutory scheme, if alien succeeded in challenging deportation, "it would be clear, in retrospect, that she should not have been held without bail in the first place. Yet she would have been denied an individualized bail determination."). Requiring exhaustion here would be pointless.

## III. Mandatory Detention Violates Due Process

The issue is whether § 1226(c)(1) violates petitioner's due process rights by requiring detention without a hearing pending removal proceedings. The statute requires that the Attorney General "take into custody any alien who [has been convicted of certain crimes] when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." *See Richardson v. Reno*, 162 F.3d 1338, 1351–52 & nn. 54–56 (11th Cir.1998) (describing criminal convictions covered by § 1226(c)(1)), *petition for cert. filed*, 67 U.S.L.W. 3561 (U.S. Feb. 23, 1999) (No. 98–1361). An alien subject to § 1226(c)(1) may be released on bond only if the alien is associated with the federal witness protection program and is not a flight risk or a danger to others. 8 U.S.C. § 1226(c)(2).

### A. Substantive Due Process

■ Permanent resident aliens enjoy a right to due process under the Fifth Amendment. *See United States v. Verdugo–Urquidez*, 494 U.S. 259, 271, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) ("aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country."). I agree with petitioner that his substantive due process claim must be evaluated under the compelling interest test, not the rational basis test proposed by respondents. *See Reno v. Flores*, 507 U.S. 292, 316, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (O'Connor, J., concurring) ("The institutionalization of an adult by the government triggers heightened, substantive due process scrutiny."). The compelling interest test prohibits the government from infringing a person's fundamental liberty interests, regardless of the process provided, unless the government narrowly tailors the infringement to serve a compelling state interest. *See United States v. Salerno*, 481 U.S. 739, 748, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Martinez v. Greene*, 28 F.Supp.2d 1275, 1282 (D.Colo.1998).

Respondents cite *Flores* as authority for applying the rational basis test. *Flores*, however, concerned custodial arrangements for juvenile aliens, not the detention of adult aliens in jail cells. 507 U.S. at

302, 113 S.Ct. 1439 ("freedom from physical restraint" "in the sense of ... barred cells" was not at issue). Unlike § 1226(c)(1), the INS regulation at issue in *Flores* gave the INS district director discretion to release juveniles. *Id.* at 297, 113 S.Ct. 1439.

■ I conclude that section 1226(c)(1) fails the compelling interest test. The government does have a compelling interest in preventing aliens with felony convictions from absconding or committing further crimes. No doubt many aliens faced with removal would jump bail if released. *See Parra*, at 955–56. Given the importance of the individual liberty interest at stake, however, § 1226(c) sweeps too broadly. Denying individual bond hearings "imputes a purpose to injure society to all detained aliens with aggravated felony convictions, regardless of the circumstances of the individual case." *St. John*, 917 F.Supp. at 246 (holding a predecessor statute to § 1226(c) unconstitutional) (citing *Kellman v. District Director*, 750 F.Supp. 625, 628 (S.D.N.Y.1990)). *Cf. Carlson v. Landon*, 342 U.S. 524, 538, 72 S.Ct. 525, 96 L.Ed. 547 (1952) ("Of course purpose to injure could not be imputed generally to all aliens subject to deportation"). Individual bond hearings before an immigration judge would serve the government interest without violating due process rights.

Respondents cite *Parra*, in which the Seventh circuit rejected a due process challenge to § 1226(c). In *Parra*, the alien conceded deportability, so his "legal right to remain in the United States [had] come to an end." 172 F.3d 954, 1999 WL 173692, at *3. The *Parra* court reasoned that "[a] criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that the removal actually occurs." *Id.*

Unlike the alien in *Parra*, however, petitioner has not conceded that he is removable. I need not address whether an alien who concedes removability retains a liberty interest protected by the Fifth Amendment. *Cf. Martinez*, 28 F.Supp.2d at 1283–84 (noting that under 8 U.S.C. § 1231, *after* entry of a final enforceable order of removal, alien becomes eligible for release on bond if the alien is not removed within 90 days).

## B. Procedural Due Process

■ Petitioner has procedural due process rights under the Fifth Amendment. *See Landon v. Plasencia*, 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (resident alien "entitled to a fair hearing when threatened with deportation"); *Richardson*, 162 F.3d at 1362 ("a permanent resident alien 'continuously present' in the United States has a right to procedural due process in any proceedings to remove that alien from the country."). To determine what process is due, the court should consider (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of the private interest, and the extent to which the risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

The private interest at stake, "the right to be free of indefinite and possible long-term detention pending a deportability determination," is significant. *Martinez*, 28 F.Supp.2d at 1283. The risk of erroneous deprivation of liberty is substantial "because [§ 1226(c) ] provides no procedure at all for determining if an alien warrants release on bond." *Id.; but see Parra*, at 958 ("the probability of error is zero when the alien concedes all elements that require removal"). The burden of holding individual bond hearings is minimal because the alien is already entitled to a hearing on removal. Any additional burden on the government imposed by individual bond hearings would not outweigh the risk of erroneous deprivations of liber-

ty, even if only a small percentage of aliens subject to § 1226(c) can show that they should be released on bond. I conclude that "due process requires an individualized consideration of whether each alien detained pursuant to § 1226(c)(1) represents a flight risk and a threat to the community's safety." *Martinez*, 28 F.Supp.2d at 1283; *but see Richardson*, 162 F.3d at 1363–64 & n. 119 (rejecting due process challenge to mandatory detention under § 1226(c)).

### CONCLUSION

The petition for writ of habeas corpus (# ) is granted.