Rosalba VANEGAS, Petitioner,

v.

Ronald SMITH, District Director, U.S. Immigration and Naturalization Service, Portland, Oregon; and John Ashcroft, U.S. Attorney General, Respondents.

No. 01–1267–PA.

United States District Court, D. Oregon.

Oct. 24, 2001.

Samuel W. Asbury, Gresham, OR, for Petitioner.

Michael W. Mosman, United States Attorney, District of Oregon, Robert D. Nesler, Assistant United States Attorney, Portland, OR, for Respondents.

## OPINION

PANNER, District Judge.

Petitioner Rosalba Vanegas, a citizen of Colombia, brings this petition for habeas corpus relief under 28 U.S.C. § 2241 against respondents Ronald Smith, District Director for the Immigration and Naturalization Service (INS), and John Ashcroft, U.S. Attorney General. Petitioner seeks either immediate release or an individualized hearing to determine her eligibility for release.

I deny the petition.

## BACKGROUND

Petitioner was born in Colombia in May 1960.

According to INS records, petitioner illegally entered the United States in June 1981 for three months and then returned to Colombia. In March 1983, petitioner entered the United States as a tourist, stayed for six months, and returned to Colombia.

In January 1984, petitioner paid a smuggler in Mexico to take her into the United States.

In August 1985, petitioner married Edward A. Crittenden, a U.S. citizen. This was the first of petitioner's three marriages to U.S. citizens. In October 1986, petitioner's divorce from Crittenden became final.

In February 1990, petitioner married Dann Duane Casey, a U.S. citizen.

In April 1990, the INS allowed petitioner to depart voluntarily until April 1991. In January 1991, petitioner traveled to Colombia. In February 1991, the INS admitted petitioner as a conditional resident based on her marriage to Casey.

In June 1993, petitioner's divorce from Casey became final. According to INS records, petitioner claimed that she and Casey had separated in September 1992. Casey, however, stated that the couple separated three months after the February 1990 marriage and had never reconciled.

In July 1993, the INS issued a notice that petitioner's status as a conditional resident had ended in February 1993 because petitioner failed to file a joint petition requesting removal of the conditional basis for her residence. Petitioner then filed a petition to remove conditions on residence.

In November 1993, petitioner gave birth to a son. The father was Mark Lytle.

In December 1993, the INS issued a notice of intent to deny petitioner's request for a waiver. In January 1994, the INS denied the waiver for cause because it found that petitioner had committed marriage fraud. The INS terminated petitioner's conditional resident status, effective February 1993.

In February 1994, the INS began deportation proceedings against petitioner by issuing an order to show cause. In November 1996, after a hearing, an immigration judge ordered that petitioner's application for a waiver be denied and that she be deported to Colombia. The immigration judge found that petitioner had committed marriage fraud, was not eligible for

a hardship or good faith waiver, and should not be permitted to depart voluntarily.

The INS sent petitioner a notice of her right to appeal. The notice included a warning that if petitioner left the United States while her appeal was pending, the INS would consider the voluntary departure to be a withdrawal of her appeal.

Petitioner, represented by counsel, appealed the order of deportation in December 1996.

At some point after 1996, petitioner married another U.S. citizen, Kenneth Wayne Buckles. Petitioner has apparently been separated from Buckles for more than a year.

In May 1997, petitioner applied for a reentry permit. According to respondents, petitioner falsely claimed that she was a permanent or conditional resident, and did not disclose her pending appeal of the deportation order.

Petitioner also applied for a replacement Alien Registration Card. Respondents allege that petitioner falsely claimed that she was a permanent resident and had lost her card. The INS approved the applications, based on petitioner's alleged misrepresentations, and issued a reentry permit and an Alien Registration Card to petitioner.

In December 1998, petitioner traveled to Colombia. She was readmitted at Miami on January 14, 1999, using her Alien Registration Card and reentry permit.

In June 2000, petitioner applied for naturalization, allegedly by falsely claiming to be a permanent resident. On June 15, 2000, an INS employee interviewed petitioner, denied her request for naturalization, and confiscated her Alien Registration Card. According to respondents, petitioner repeatedly lied during the INS interview about her immigration status,

denying that removal proceedings were pending and claiming that the INS had not tried to terminate her resident status.

In January 2001, petitioner applied for another replacement Alien Registration Card, allegedly by falsely claiming to be a permanent resident who had lost her card. In February 2001, based on petitioner's representations, the INS approved the application.

On August 6, 2001, the INS office in Portland mailed petitioner a "call in" notice, ordering her to appear with her current and expired Colombian passports, her temporary alien resident card, and her resident alien card. On August 15, 2001, petitioner appeared at the Portland INS office, where the INS took her into custody and served her with an arrest warrant and a notice of intent to reinstate the prior order of removal. The INS also moved to dismiss petitioner's appeal to the Board of Immigration Appeals, based on petitioner's leaving the U.S. while her appeal was pending.

On August 20, 2001, an immigration judge ruled that he lacked jurisdiction to hear petitioner's request for release from custody. The immigration judge cited 8 C.F.R. § 241.8, which provides in part that "[a]n alien who illegally reenters the United States after ... having departed voluntarily, while under an order of exclusion, deportation, or removal shall be removed from the United States by reinstating the prior order." The INS considers a reinstated order of removal to be final and immediately executable. *See Castro–Cortez v. INS*, 239 F.3d 1037, 1042 (9th Cir. 2001) ("the government no longer permits aliens subject to reinstatement to appear before an IJ or appeal to the Board of Immigration Appeals").

On August 23, 2001, petitioner filed the current petition.

On August 27, 2001, the INS received petitioner's Colombian passports from an Oregon state court.

On September 12, 2001, the INS reinstated the prior removal order and issued a warrant of removal.

On September 27, 2001, the Board of Immigration Appeals rejected petitioner's challenge to the immigration judge's determination that her voluntary departure withdrew her appeal.

## DISCUSSION

Respondents contend that petitioner's detention is authorized by 8 U.S.C. § 1231(a)(2), which provides, "During the removal period, the Attorney General shall detain the alien." The removal period begins "[t]he date the order of removal becomes administratively final"; or, "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order."

 Respondents argue that the reinstated 1996 order of deportation is final under 8 U.S.C. § 1231(a)(5), which requires the reinstatement of a removal order if the alien illegally reenters the United States after departing voluntarily:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal[1], the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

*See also* 8 C.F.R. § 3.4 (voluntary departure constitutes withdrawal of administra-

tive appeal, and initial decision becomes final). An alien seeking to challenge the reinstatement of a removal order must seek direct review with the circuit court. *See Castro–Cortez,* 239 F.3d at 1043–44.

 Under this statutory scheme, I agree with respondents that the reinstated order of deportation is administratively final, which triggers the beginning of the "removal period." *See* 8 U.S.C. § 1231(a)(2). During the removal period, respondents may detain petitioner for at least six months while making reasonable efforts to remove petitioner. *See Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 2504–05, 150 L.Ed.2d 653 (2001).

 Petitioner contends that she legally reentered the United States. To the extent that petitioner is challenging the merits of the reinstatement order, however, petitioner must seek direct review with the circuit court. *See Castro–Cortez,* 239 F.3d at 1043–44, 1047.

Petitioner relies on *Van Eeton v. Beebe,* 49 F.Supp.2d 1186 (D.Or.1999). *Van Eeton,* however, concerned the constitutionality of 8 U.S.C. § 1226(c), which applies only to aliens with criminal convictions who are in pending removal proceedings. Here, because the deportation order is administratively final and petitioner has no criminal convictions, *Van Eeton* does not apply.

## CONCLUSION

The petition for writ of habeas corpus (# 1) is denied.

---

**1.** Although the statute refers to "orders of removal," it "also applies to orders of depor-

tation." *Gallo–Alvarez v. Ashcroft,* 266 F.3d 1123, 1129 n. 3 (9th Cir.2001).