Jesus LOZANO–CASTANEDA, et al., Petitioners,

v.

Luis GARCIA, District Director, Immigration and Naturalization Service, et al., Respondents.

No. EP–02–CA–0189–DB.

United States District Court, W.D. Texas, El Paso Division.

Dec. 26, 2002.

Felipe D.J. Millan, Attorney at Law, El Paso, TX, for petitioners.

Guadalupe R. Gonzalez, Jose J. Tavarez, Special Assistant U.S. Attorney, Immigration and Naturalization Services, El Paso, TX, for respondents.

### MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Petitioners' Petition for a Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief, filed in the above-captioned cause on May 6, 2002; Respondents' "Motion to Dismiss and Return and

Answer to Petition for a Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief and Incorporated Memorandum of Points and Authorities," filed June 17, 2002; and Petitioners' Reply to Respondents' Motion to Dismiss, filed July 25, 2002. After due consideration, the Court is of the opinion that Respondents' Motion to Dismiss should be denied and Petitioners' Petition for Writ of Habeas Corpus should be granted.

## BACKGROUND

This Petition is filed on behalf of seven detainees, all of whom raise the same five claims. Respondents concede that all Petitioners are lawful permanent residents. The following represents a brief background summary as to each Petitioner.

### 1. Jesus Lozano–Castaneda

On October 1, 1996, Petitioner Lozano–Castaneda pled guilty in the 287th Judicial District Court of El Paso County, Texas, to one count of forgery. Petitioner Lozano–Castaneda was sentenced to a one-year term of imprisonment in the state county jail facility. On August 28, 2001, the Immigration and Naturalization Service ("INS") issued a Notice to Appear, charging that Petitioner was removable from the United States pursuant to § 237(a)(2)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(i).[1]

On August 28, 2001, proceeding before an Immigration Judge ("IJ"), Petitioner Lozano–Castaneda was found removable based on his forgery conviction. The IJ initially ordered that Petitioner Lozano–Castaneda be released under a $10,000.00 bond. Subsequently, on October 22, 2001, the IJ determined that she did not have authority to set bond based on Petitioner Lozano–Castaneda's status as an aggravated felon as defined by INA § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R).[2]

Petitioner Lozano–Castaneda filed a Writ of Error Coram Nobis, which was granted and effectively reduced his sentence from one year to 120 days imprisonment. Counsel for the INS argued that the order granting the Writ of Error Coram Nobis could not be used to avoid removal. The IJ reset the case to May 20, 2002, to allow Petitioner Lozano–Castaneda to file a petition for writ of habeas corpus.

### 2. Vicente Banda–Garcia

On February 13, 2001, Petitioner Banda–Garcia pled guilty in the United States District Court for the District of New Mexico to aggravated assault with a deadly weapon. Petitioner Banda–Garcia was sentenced to an 18–month term of imprisonment. On May 21, 2001, the INS issued a Notice to Appear, charging that Petitioner was removable from the United States pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(i), as an alien convicted of an aggravated felony as described in INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F).[3] On the same day, an IJ ordered that Petitioner Banda–Garcia be detained in the custody of the INS. On

---

1. INA § 237(a)(2)(A)(i) states that "[a]ny alien who is convicted of a crime involving moral turpitude committed within five years after the date of admission is removable." 8 U.S.C.A. § 1227(a)(2)(A)(i) (West 2001).

2. INA § 101(a)(43)(R) states that "[t]he term 'aggravated felony' means ... an offense related to commercial bribery, counterfeiting, forgery ... for which the term of imprisonment is at least one year." 8 U.S.C.A. § 1101(a)(43)(R) (West 2001).

3. INA § 101(a)(43)(F) states that "[t]he term 'aggravated felony' includes ... a crime of violence for which the term of imprisonment is at least one year." 8 U.S.C.A. § 1101(a)(43)(F). (West 2001).

August 27, 2001, the IJ determined that she did not have authority to set bond based on Petitioner Banda–Garcia's status as an aggravated felon as defined by INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F).

### 3. *Bernardo Aaron Villareal–Huerta*

On April 27, 2001, Petitioner Villareal–Huerta pled guilty in the United States District Court for the Western District of Texas to conspiracy to distribute and possession with intent to distribute in violation of 21 U.S.C. § 846. Petitioner Villareal–Huerta was sentenced to a 12–month and one day term of imprisonment. On March 18, 2002, the INS issued a Notice to Appear, charging that Petitioner was removable from the United States pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony as described in INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B).[4] On the same day, an IJ ordered that Petitioner be detained in the custody of the INS. On April 11, 2002, the IJ determined that she did not have authority to set bond based on Petitioner Villareal–Huerta's status as an aggravated felon as defined by INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B).

### 4. *Salomon Jimenez*

On October 2, 2001, Petitioner Jimenez pled guilty in a New Mexico State District Court to sexual contact of a minor. Petitioner Jimenez was sentenced to a three-year term of imprisonment. On November 1, 2001, the INS issued a Notice to Appear, charging that Petitioner was removable from the United States pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C.

§ 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony as described in INA § 101(a)(43)(A), 8 U.S.C. § 1101(a)(43)(A).[5] On that same day, the INS ordered that Petitioner Jimenez be detained in INS custody. Petitioner Jimenez is currently awaiting a decision by the IJ on whether he is removable from the United States.

### 5. *Pablo Hernandez–Sotelo*

On April 6, 2001, Petitioner Hernandez–Sotelo was convicted in a New Mexico State District Court of conspiracy to commit trafficking a controlled substance, to wit: methamphetamine by manufacturing and possession of drug paraphernalia. Petitioner Hernandez–Sotelo was sentenced to a combined term of a four-year less one day term of imprisonment. On October 12, 2001, the INS issued a Notice to Appear, charging that Petitioner was removable from the United States pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony as described in INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B). On that same day, the INS ordered that Petitioner Hernandez–Sotelo be detained in INS custody. Petitioner Hernandez–Sotelo is in the midst of challenging his charge of removability based on a claim of United States citizenship.

### 6. *Javier Armando Villanueva–Ortiz*

On February 26, 2000, Petitioner Villanueva–Ortiz pled guilty in the United States District Court for the Southern District of Texas to possession with intent to distribute 59 kilograms of marijuana. Petitioner Villanueva–Ortiz was sentenced to a 30–month term of imprisonment.

---

**4.** INA § 101(a)(43)(B) states that "[t]he term 'aggravated felony' includes ... illicit trafficking of a controlled substance, including a drug trafficking crime." 8 U.S.C.A. § 1101(a)(43)(B) (West 2001).

**5.** INA § 101(a)(43)(A) states that "[t]he term 'aggravated felony' includes ... a murder, rape, or sexual abuse of a minor." 8 U.S.C.A. § 1101(a)(43)(A) (West 2001).

The INS issued a Notice to Appear, charging that Petitioner was removable from the United States pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony as described in INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B). On May 17, 2002, an IJ ordered that Petitioner Villanueva–Ortiz be detained in the custody of the INS and deported pursuant to § 101(a)(43)(B).

### 7. *Rafael Calderon–Renteria*

On August 4, 1998, Petitioner Calderon–Renteria pled guilty in a New Mexico State District Court to distribution of a methamphetamine. Petitioner Calderon–Renteria was sentenced to a three-year term of imprisonment. Approximately two years later, Petitioner was again convicted of possession of a methamphetamine. He received an eighteen-month prison sentence with a one year enhancement for being an habitual offender.

The INS issued a Notice to Appear, charging that Petitioner was removable from the United States pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony as described in INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B). An IJ ordered that Petitioner be detained in the custody of INS and deported pursuant to § 101(a)(43)(B). On October 2, 2001, the IJ determined that she had no jurisdiction to review Petitioner's custody determination based on his status as an aggravated felon as defined by INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B). Petitioner Calderon–Renteria filed an appeal with the BIA on February 1, 2002. He remains in custody pursuant to INA § 236(c) until the conclusion of his removal proceedings.

Petitioners collectively filed the instant Petition for Writ of Habeas Corpus Complaint for Injunctive and Declaratory Relief on May 6, 2002. Since all Petitioners are currently being detained under the mandatory detention provision § 236(c), they collectively challenge the constitutionality of § 236(c) of the INA. Specifically, the Petition raises the issue of whether a lawful permanent resident alien should be at liberty pending his or her removal proceedings initiated on the basis of a serious criminal conviction or serious criminal behavior. Petitioners further argue that denying them the right to be free from detention pending removal proceedings is in violation of the Fifth Amendment's procedural and substantive due process strictures, the Eighth Amendment, the Administrative Procedure Act, and the Equal Access to Justice Act.

## DISCUSSION

### I. *Jurisdiction*

Respondents claim that Petitioner Castaneda–Lozano lacks standing to pursue a writ of habeas corpus because he is not being held pursuant to the mandatory detention provision, § 236(c). On August 28, 2001, the INS issued a warrant for Castaneda–Lozano's arrest pursuant to § 236 of the INA. On that same day, the INS ordered that Castaneda–Lozano could be released under a $10,000 bond. However, it appears from the record, Respondents admissions and exhibits, that on October 28, 2001, the INS added an additional charge, alleging that Castaneda–Lozano was removable based on his conviction for an aggravated felony pursuant to § 237(a)(2)(A)(iii). An IJ determined that she did not have authority to set bond for Castaneda–Lozano pursuant to § 236(c), as evidence by the Order of the Immigration Judge with Respect to Custody. Since the date of that Order, October 28, 2001, Castaneda–Lozano remains in INS custody. Wherefore, the Court finds that

Petitioner Castaneda–Lozano does have standing to bring the instant petition for writ of habeas corpus because he is currently in INS custody pursuant to § 236(c).

## II. *Constitutionality of § 236(c) of the INA*

### A. The Applicable Law

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") which amended the INA to include § 236(c). Section 236(c), provides, in relevant part, that:

> The Attorney General shall take into custody any alien who—
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C.A. § 1226(c)(1) (West 1999).

Under § 236(c), the Attorney General is thus required to take into custody aliens who have committed certain offenses without granting the alien a bail review hearing. *Id.* The alien must remain in custody until deportation proceedings are complet-

ed. *Id.* Once deportation proceedings become final, if the INS does not remove the alien within 90 days, he becomes eligible for release from custody. 8 U.S.C.A. § 1231(a)(3) (West 1999). However, pending completion of those proceedings, the Attorney General may only release the alien for witness protection purposes—an issue not implicated in any of Petitioners' cases. 8 U.S.C.A. § 1226(c)(2) (West 1999).

Section 236(c) specifically pertains to "criminal aliens." This section and its mandatory detention provision applies to resident aliens who are convicted of aggravated felonies. An "aggravated felony" is broadly defined under 8 U.S.C. § 1101(a)(43) to include, among other things, crimes of violence, drug offenses, and offenses related to theft and fraud. The crimes committed by the Petitioners' in this case are all categorized as an aggravated felonies and, thus, trigger the mandatory detention provision under § 236(c). 8 U.S.C.A. § 1101(a)(43)(N) (West 1999).

Whether the mandatory detention provision is unconstitutional as applied to permanent resident aliens is the issue currently before the Court. Petitioners argue that the mandatory detention provision is a violation of their substantive and procedural due process rights. First, the Due Process Clause of the Fifth Amendment provides that, "[n]o person shall . . . be deprived of life, liberty, or property without due process of law." U.S. CONST. amend. V. In order to resolve this constitutional issue, the Court must systematically perform a two-step analysis as described by the Supreme Court in *Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772 (1997).

In reviewing a legislative enactment, the Court must first determine "whether the claimed violation involves one of 'those fun-

damental rights and liberties, which are, deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Id.* (quoting *Moore v. City of East Cleveland, Ohio,* 431 U.S. 494, 503, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977)). The second step depends on the outcome of the first step. *Id.* If the asserted interest is "fundamental," then the court must apply strict scrutiny to the legislative enactment. *Id.* at 762, 117 S.Ct. 2258. On the other hand, if the interest is not fundamental, the court should only apply a rational-basis standard of review. *Id.* at 767, 117 S.Ct. 2258.

Respondents argue that Petitioners are only entitled to diminished due process protections because they do not possess fundamental liberty interests. As alluded to in their Brief, Respondents essentially contend that Petitioners have been stripped of their constitutional protections by having committed criminal acts. In doing so, they place great reliance on the Seventh Circuit's opinion in *Parra v. Perryman,* 172 F.3d 954 (7th Cir.1999). However, the *Parra* analysis has been rejected in a number of more recent cases, those of which are cited below.

### B. Substantive Due Process

#### *Fundamental Right*

■ This Court must first make a careful identification of the asserted liberty right. Here, the issue is whether an individual detained pending immigration proceedings is entitled to receive a bail hearing in which a judge determines the individual's flight risk and threat to the community. The Supreme Court has impliedly held that such an interest is fundamental. *United States v. Salerno,* 481 U.S. 739, 750, 107 S.Ct. 2095, 2103, 95 L.Ed.2d 697 (1987) (holding that government detention violates the Fifth

Amendment Due Process clause unless the detention is ordered in a criminal proceeding with adequate procedural protections.). In *United States v. Salerno,* the Supreme Court addressed the constitutionality of pretrial detention for arrestees under the Bail Reform Act of 1984, allowing for the detention of an arrestee without bail pending trial if the Government demonstrated by clear and convincing evidence after an adversary hearing that no release conditions would reasonably assure the safety of the community. 481 U.S. at 750, 107 S.Ct. 2095. The Court upheld the constitutionality of the statute after balancing the Government's interest in detention against "the individual's strong interest in liberty." *Id.* The Court concluded that the arrestee's liberty interest could not lawfully be infringed unless the process was narrowly tailored to serve a compelling state interest. *Id.* at 748, 107 S.Ct. 2095.

Despite the interest declared in *Salerno,* Respondents argue that Petitioners are not afforded this right because they have lost their lawful permanent resident status and are in detention pending removal. In support of their argument, Respondents rely on the Seventh Circuit decision in *Parra v. Perryman.* In *Parra,* the petitioner was convicted of aggravated criminal sexual assault, an aggravated felony requiring removal under the INA and thus invoking mandatory detention pursuant to § 236(c). *Parra,* 172 F.3d at 955. The court held that mandatory detention did not infringe upon the petitioner's due process rights because his interest was "not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country." *Id.* at 958. In doing so, the court concluded that "[a] criminal alien who insists on postponing the inevitable has no constitutional right to

remain at large during the ensuing delay." *Id.*

Since *Parra,* several courts have held that mandatory detention of lawful permanent resident aliens without individualized bond hearings violates the alien's due process interests. The Third, Ninth, and Tenth Circuit Courts of Appeal have all held that a permanent resident alien convicted of an aggravated felony does not forfeit his due process rights such that only a diminished liberty interest should be recognized. *Kim v. Ziglar,* 276 F.3d 523 (9th Cir.2002); *Hoang v. Comfort,* 282 F.3d 1247 (10th Cir.2002); *Patel v. Zemski,* 275 F.3d 299 (3rd Cir.2001).

The Third, Ninth and Tenth Circuits have rejected *Parra's* rationale and adopted 'the rationale echoed in the Supreme Court decision in *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). In *Zadvydas,* two non-U.S. citizens were being held indefinitely beyond the normal statutory-removal period of ninety days, because no country would accept them. A post-removal-period statute authorized such detention. The issue, however, was whether the post-removal statute authorized indefinite detention, or detention only for a period reasonably necessary to secure removal. The language of the statute set no such limit. The Court read an implicit reasonableness limit into the statute to avoid "serious constitutional problem[s]." *Id.* at 680, 121 S.Ct. 2491. Citing principles of constitutional avoidance, it read an express limitation into the statute. *Id.* at 707, 121 S.Ct. 2491. The Court held that detention of resident aliens for up to six months after entry of a final removal order was presumptively reasonable, but that after six months, if an alien could demonstrate that

there was good reason to believe that there was no significant likelihood of removal in the reasonably foreseeable future, the Government had to rebut the alien's showing in order to continue lawful detention of the alien. *Id.* at 701, 121 S.Ct. 2491. The Supreme Court relied on *United States v. Salerno,* as discussed above, to hold that the Government must demonstrate "special justifications," such as those involving terrorists or especially dangerous individuals, for continued indefinite detention. *Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491.

Respondents argue that the issue in *Zadvydas* involved the indefinite, potentially permanent, post-order detention of an alien with no possibility of removal, and is thus distinguishable from detention under § 236(c)(1), which ends at the completion of the deportation proceedings. However, this Court is not persuaded. Although the petitioner's circumstance in *Zadvydas* is distinguishable from that of the Petitioners in this case, the holding in *Zadvydas* is applicable in the sense that it recognizes the existence of a fundamental liberty interest for permanent resident aliens. The *Zadvydas* Court expressly rejected the Government's position that "whatever liberty interest the aliens possess, it is 'greatly diminished' by their lack of a legal right to live at large in this country." *Id.* at 696, 121 S.Ct. 2491. It stands to reason that if permanent resident aliens who have a final removal order pending against them have "strong" constitutional due process rights, then so should permanent resident aliens who do not yet have a final removal order issued against them. Thus, they have a fundamental right to a determination of whether their liberty interests should be impinged during the deportation process.[6]

---

6. The Northern District of Texas and the Northern District of California have also

come to the same opinion, that permanent resident aliens who have a final removal or-

■ This Court agrees that the fundamental right to be free from bodily restraint is not reserved exclusively for citizens; rather, "all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth and Sixth] amendments." *Wong Wing v. United States,* 163 U.S. 228, 238, 16 S.Ct. 977, 981, 41 L.Ed. 140 (1896); *see also Harisiades v. Shaughnessy,* 342 U.S. 580, or 586–87 n. 9, 72 S.Ct. 512, 517 n. 9, 96 L.Ed. 586 (1952) (concluding that immigrants stand "on an equal footing with citizens" under the Constitution with respect to protection of personal liberty). It strains the imagination that individuals detained because of criminal activity should have more rights than those held simply for regulatory purposes. Wherefore, this Court joins the Third, Ninth, and Tenth Circuits, as well as the Northern District of Texas and the Northern District of California, in finding that although due process rights can be denied to aliens seeking admission to the United States, permanent resident aliens enjoy a fundamental right to due process even if their deportation is inevitable.

### Standard of Review

■ Having determined that a fundamental right exists, the Court must now move to the second prong of the analysis; it must determine whether the purpose adopted for a mandatory detention provision outweighs the individual's constitu-

tionally protected interest, thus withstanding the heightened standard set forth in *Salerno,* 481 U.S. at 740, 107 S.Ct. 2095; *see also Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491.[7]

Respondents contend that, despite the fundamental interest involved, the Court should employ a highly deferential standard. Citing *Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), Respondents maintain that § 236(c) was passed pursuant to Congress's plenary power over immigration and, therefore, this Court must apply a deferential rational basis test. This test applies "the (unexacting) standard of rationally advancing some legitimate governmental purpose...." *Id.* at 306, 113 S.Ct. 1439.

This Court joins those courts that have rejected the application of *Flores* to § 236(c). *See, e.g., Van Eeton v. Beebe,* 49 F.Supp.2d 1186, 1189 (D.Or.1999); *Danh v. Demore,* 59 F.Supp.2d 994, 1003–04 (N.D.Cal.1999); *Martinez v. Greene,* 28 F.Supp.2d 1275, 1281 (D.Colo.1998). First, the situation in *Flores* was substantially different from the situation facing aliens detained under § 236(c). *Flores* upheld the constitutionality of release procedures requiring that juvenile aliens, held in INS custody, be released only to a parent or lawful guardian. *Flores,* 507 U.S. at 301–02, 113 S.Ct. 1439. The Court emphasized, however, that "juveniles, unlike adults, are always in some form of custody, and where the custody of the parent or legal guardian

der pending against them are also afforded "strong" constitutional due process rights. *Serrano v. Estrada,* 201 F.Supp.2d 714, 718 (N.D.Tex.2002) (permanent resident aliens who do not yet have a final removal order issued against them have a fundamental right to a determination of whether their liberty interests should be impinged during the deportation process.); *Danh v. Demore,* 59 F.Supp.2d 994, 1003 (N.D.Cal.1999) (the actual right at issue is the "modest," yet no less fundamental "right to an individualized bond

determination regarding whether release pending deportation is appropriate.").

7. The Court in *Zadvydas,* after finding that a heightened standard of review applied to a lawful permanent resident, employed the two-part substantive due process inquiry established in *Salerno.* Therefore, these two cases have conjunctively set forth the heightened standard required for the present fundamental right.

fails, the government may (indeed, we have said must) either exercise custody itself or appoint someone else to do so." *Id.* at 302, 113 S.Ct. 1439. In contrast, this case involves the application of § 236(c) to adults detained pending removal proceedings.

Moreover, the *Flores* Court emphasized that the facilities where the juveniles were detained were more akin to "legal custody" than "detention." *Id.* at 297–98, 113 S.Ct. 1439. Therefore, the "freedom from physical restraint . . . . [at least] in the sense of shackles, chains, or barred cells" was not implicated. *Id.* at 301–02, 113 S.Ct. 1439. According to the Court, these facilities were

> not correctional institutions but facilities that meet state licensing requirements for the provision of shelter care, foster care, group care, and related services to dependent children [that include] an extensive list of services, including physical care and maintenance, individual and group counseling, education, recreation and leisure-time activities, family reunification services, and access to religious services, visitors, and legal assistance . . . .

*Id.* at 298, 113 S.Ct. 1439. By comparison, Petitioners in this case are detained pursuant to § 236(c), and are held in a less accommodating, more primitive prison-like setting. Therefore, this Court will apply the more exacting standard first established in *Salerno* and then affirmed in *Zadvydas.* The heightened standard requires a two-part analysis: (1) whether the infringement of a liberty interest is impermissible punishment or a permissible regulation, and (2) whether it is excessive in relation to the regulatory goal Congress sought to achieve. *Salerno*, 481 U.S. at 746–47, 107 S.Ct. 2095. Courts must balance these two competing interests.

■  Applying the first prong of the *Salerno* inquiry to § 236(c), the Court readily

concludes that the statute constitutes permissible regulation. The power to deport necessarily encompasses the power to detain. Thus, the detention mandated in § 236(c) is regulatory and not punitive. *See Carlson v. Landon,* 342 U.S. 524, 537–38, 72 S.Ct. 525, 533, 96 L.Ed. 547 (1952) ("Deportation is not a criminal proceeding and has never been held to be punishment. . . . Detention is necessarily a part of this deportation procedure."). The issue, therefore, is whether the restriction is excessive in relation to its purpose.

Respondents claim that § 236(c) was enacted in order to ensure that criminal aliens do not escape the application of the immigration laws and subsequent removal hereunder. Respondents rely on a 1995 report by the Senate Governmental Affairs Committee finding that " '[t]hrough 1992, nearly 11,000 criminal aliens convicted of aggravated felonies (which are particularly serious crimes) failed to appear for deportation hearings.' " Def. Brief at 24 (*quoting* s. rep. no. 104–48, 1995 WL 170285 (April 7, 1995)). Respondents also claim that

> [t]he enormous failure by aliens released on bond or parole to appear at their immigration proceedings imposes a substantial cost on the people and government of the United States. Assuring that removal proceedings continue in a way so that aliens with little hope of remaining will be expeditiously removed from the United States is more than a legitimate and bona fide reason.

Res. Brief at 10–11. According to Respondents, these are sufficiently compelling goals to satisfy even the more exacting *Salerno* standard. Respondents further contend that mandatory detention is necessarily an integral part of Congress's streamlined removal process.

After reviewing Respondents' arguments and the specific facts relating to

Petitioners in this case, this Court is of the opinion that, given the liberty interest involved and the lack of safeguards delineated in the statute, the scope of § 236(c) is excessive in relation to its purpose and, therefore, violative of Petitioners' substantive due process rights. Respondents' arguments are not persuasive in light of the fundamental right at stake, the right to be free from detention. The Petitioners in this case, although all previously-convicted of aggravated felonies, have all completed their sentences imposed for their crimes. They are all currently being detained pending removal while an over-exhausted administration processes their paperwork. Respondents' argument that an overwhelming amount of aliens fail to appear for bond review is well-taken, yet irrelevant when considering whether an individual should be released on bond. Likewise, it is a violation of Petitioners' due process rights to summarily determine, through a statutory mandatory detention requirement, that they are unlikely to appear. That determination should be made in court where the Government must prove that each Petitioner is a flight risk. The Court finds untenable Respondents' argument that aliens, "with little hope of remaining" in the United States and who will ultimately be removed, should not be afforded the right to a bond hearing. To say that an individual, regardless of whether or not he is deportable, should remain in custody pending such resolution, is like saying, an individual charged with a crime, regardless of whether or not he is guilty, should remain in custody pending his trial. If an individual charged with a crime is afforded the constitutional right to due process in the form of a bond hearing, so too should an individual pending removal in immigration proceedings.

This Court is not alone in its thinking. Many courts have spoken out on the unconstitutionality of § 236. *See, e.g., Serrano v. Estrada,* 201 F.Supp.2d 714 (N.D.Tex.2002); *Bouayad v. Holmes,* 74 F.Supp.2d 471 (E.D.Pa.1999); *Danh v. Demore,* 59 F.Supp.2d 994 (N.D.Cal.1999); *Van Eeton v. Beebe,* 49 F.Supp.2d 1186 (D.Or.1999); *Martinez v. Greene,* 28 F.Supp.2d 1275 (D.Colo.1998); *Chamblin v. I.N.S.,* 1999 WL 803970 (D.N.H. June 8, 1999). *Cf. Ngo v. INS,* 192 F.3d 390, 398 (3d Cir.1999) (in immigration context, indefinite detention without ongoing review of alien's danger to the community or flight risk violates due process); *Ma v. Reno,* 208 F.3d 815, 825–27 & nn. 23, 24 (9th Cir.2000) ("seriously questioning" conclusion that indefinite detention, even in immigration context, is constitutional). *Contra Parra v. Perryman,* 172 F.3d 954, 958 (7th Cir.1999) (holding that § 236(c) is constitutional). *Ho v. Greene,* 204 F.3d 1045, 1059–60 (10th Cir.2000) (holding that indefinite detention pending deportation is constitutional).

Admittedly, the Government has an interest in preventing future crimes, as well as flight by individuals undergoing deportation proceedings, but Congress has other "ways to rectify the problem of aliens absconding before deportation that do not implicate petitioners' right to freedom from arbitrary detention." *Danh,* 59 F.Supp.2d at 1001; *see also Ngo,* 192 F.3d at 398 ("The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category. Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption."). *Bouayad,* 74 F.Supp.2d at 475 ("While the risk of flight by aliens may be significant, the public can still be protected by a careful evaluation of an individual alien's case, which should result in the detention of those who are likely to flee."). In the absence of a bond hearing, Congress's use of a blanket, irrefutable presumption is excessive in relation to its

purpose of preventing flight and future crimes.

In addition, the Court rejects the notion that safeguards delineated within the statute are sufficient to protect the rights of individuals like Petitioners. For example, § 236 contains safeguards providing the detained alien with the right to an individualized hearing before an IJ (and administrative appeal) on the issue of whether he falls within the mandatory detention provisions. This safeguard provides no protection for most detained individuals, and cannot be used as a justification for depriving a detainee of his liberty interest. That "individualized hearing" would determine only whether a detainee is eligible for the witness protection program. 8 U.S.C.A. § 1226(c)(2) (West 1999); *Martinez*, 28 F.Supp.2d at 1283. If not, the IJ lacks authority to release him. 8 U.S.C.A. § 1226(c)(2) (West 1999); *Martinez*, 28 F.Supp.2d at 1283. "[W]here, as here, a fundamental liberty interest is implicated, constitutional due process may not be parsed and distributed solely to the persons adjudged by Congress to deserve it." *Martinez*, 28 F.Supp.2d at 1283.

The second purported safeguard is that § 236(c) excludes the possibility of indefinite detention by limiting the duration of detention to the conclusion of removal proceedings and a 90–day removal period. This safeguard likewise does not help individuals like the Petitioners in this case. Section 241(a)(1) of the INA provides that the Attorney General shall remove the alien within a period of 90 days from the date the order of removal becomes administratively final. 8 U.S.C.A. § 1231(a)(1) (West 1999). But, § 236(c) does not provide any time limits on detention pending issuance of that final order. 8 U.S.C.A. § 1226(c) (West 1999). Petitioner Castaneda–Lozano, for example, has been in INS custody since August 28, 2001, and has not received any review of his danger to the community or flight risk, as would be typical in a bail review hearing.[8] At this time Respondents are unable to provide any indication as to when Petitioner Castaneda–Lozano's removal will occur. For all the reasons set forth above, the Court finds that § 236(c) fails the *Salerno* test and violates Petitioners' substantive due process rights.

### C. Procedural Due Process

■ Because the Court concludes that Petitioners' substantive due process rights were violated, it is strictly unnecessary to determine whether their procedural due process rights were also compromised. Only when a restriction on liberty survives substantive due process scrutiny does the further question of whether the restriction is implemented in a procedurally fair manner becomes ripe for consideration. *Salerno*, 481 U.S. at 746, 107 S.Ct. 2095. Nonetheless, the Court considers Petitioners' procedural due process claim in the event it is later determined that § 236(c) withstands substantive due process scrutiny.

■ To determine whether a statute or governmental conduct satisfies procedural due process, courts must balance the following factors: (1) the private interest affected by the official action; (2) the risk of

---

8. Petitioner Banda–Garcia has been in INS custody since May 21, 2001. Petitioner Villareal–Huerta has been in INS custody since March 18, 2002. Petitioner Jimenez has been in INS custody since November 1, 2001. Petitioner Hernandez–Sotelo has been in INS custody since October 21, 2001. Petitioner Aguilera Sandoval has been in INS custody since December 13, 2001. Petitioner Villanueva–Ortiz has been in INS custody since March 7, 2002. Petitioner Calderon–Renteria has been in INS custody since August 22, 2001. Petitioner Flores Mariz has been in INS custody since August 24, 2001. All Petitioners have not received any review of his or her danger to the community or flight risk, as would be typical in a bail review hearing.

an erroneous deprivation of the interest; (3) the probable value of additional or substitute procedural safeguards; and (4) the government's interest, including the fiscal and administrative burdens that additional or substitute procedures would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). By now it is well established that legal aliens are entitled to due process under *Mathews.* Permanent resident aliens are protected by the Due Process Clause of the Fifth Amendment. *Landon v. Plasencia,* 459 U.S. 21, 33–34, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982) (applying the *Mathews* test to a permanent resident alien who was denied readmission into this country while attempting to smuggle illegal aliens from Mexico). Numerous courts have applied *Mathews* to review mandatory immigration detention statutes such as § 236(c). *See, e.g., Van Eeton v. Beebe,* 49 F.Supp.2d 1186 (D.Or.1999) (permanent resident alien challenging § 236(c)'s blanket denial of bond); *Martinez v. Greene,* 28 F.Supp.2d 1275 (D.Colo.1998); *St. John v. McElroy,* 917 F.Supp. 243 (S.D.N.Y.1996) (permanent resident alien challenging denial of parole pending exclusion).

■ Under *Mathews,* a statute such as § 236(c) that denies even the possibility of bond can scarcely claim constitutional sanction. The interest at stake here is fundamental to any democratic society: the right to freedom from arbitrary detention. Because Petitioners' continued detention is unlikely to further any of the asserted purposes behind § 236(c), the risk of an erroneous deprivation of that interest is acute. Respondents could easily avoid these problems by affording individuals in the Petitioners' situation an individualized bond hearing. The additional burden of such a hearing to the overall deportation process—a process that may take months or even years—is slight compared to the rights at stake. Indeed, release on bond may actually serve the Government's inter-est by freeing up unnecessarily occupied detention space. "A fundamental requirement of due process is 'the opportunity to be heard' .... at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The prior bond determination hearing, if offered, before the IJ afforded Petitioners no opportunity to be heard regarding their dangerousness or flight risk. The IJ merely followed § 236(c) strictures and found he did not have jurisdiction to hold a bond hearing in each situation. Petitioners are therefore each entitled to an individualized bond hearing before the IJ. For these reasons, even if § 236(c) does not violate Petitioners' substantive due process rights, it deprives him of procedural due process.

### D. Statutory Claims

Because the Court finds that the mandatory detention provisions of 8 U.S.C. § 1226(c) are unconstitutional and provide a basis for granting Petitioners' writ of habeas corpus, it does not decide any of their statutory claims.

### CONCLUSION

While Petitioners do not have an absolute right to remain at liberty while the INS undertakes removal proceedings against them, due process requires an individualized hearing on the necessity of detention as to each Petitioner. Accordingly, the Court will grant Petitioners' Petition for a Writ of Habeas Corpus unless the Government begins a review process, including an individual hearing, within thirty days to determine whether each Petitioners' continued detention is necessary to prevent a risk of flight or a threat to the community.

Accordingly, **IT IS ORDERED** that Respondents' Motion to Dismiss and Return and Answer to Petition for a Writ of Habe-

as Corpus and Complaint for Injunctive and Declaratory. Relief and Incorporated Memorandum of Points and Authorities, filed June 17, 2002, is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioners' Complaint for Injunctive and Declaratory Relief declaring 8 U.S.C. § 1226(c), INA § 236(c) unconstitutional on its face is **GRANTED.** It is **DECLARED** that 8 U.S.C. § 1226(c), INA § 236(c) is unconstitutional on its face.

**IT IS FINALLY ORDERED** Petitioners' Petition for a Writ of Habeas Corpus is **GRANTED** to the extent that Respondents shall provide each Petitioner with an individualized bond hearing **WITHIN THIRTY DAYS.**